CLAFLIN and others *vs.* THE FARMERS AND CITIZENS' BANK
OF LONG ISLAND.

An agent cannot, in general, act so as to bind his principal in matters touching
his agency, where he has an adverse interest in himself. But there is an
exception, in the application of this principle, in favor of the holders of ne-
gotiable paper acquired in good faith before due, for value, without notice
of the misconduct of the agent, or the knowledge of such facts as would
amount to a want of good faith in the taker of such paper.

Where the president of a bank, having authority as such to certify checks
drawn upon the bank, certifies his own checks, and the checks of another
person, and delivers them to the payee, who thereupon pays to the drawers
the full amount of the face of such checks, and transfers and indorses the
same to a *bona fide* holder, the latter can enforce the payment of the checks
by the bank; notwithstanding the drawers had no funds in the bank, at the
time the checks were drawn.

No presumption of bad faith in the holder necessarily arises from the identity
of the names of the drawer and the president of the bank; nor will the cer-
tification of his own check by the president of a bank be conclusive, as evi-
dence, to deprive the holder of the protection afforded to *bona fide* holders
of negotiable paper.

APPEAL from a judgment entered on the report of a ref-
eree. The complaint averred that the defendants are a
corporation created by and under the statutes of the state of
New York, and transacting business at Williamsburgh, in
the county of Kings. That at the dates of the several instru-
ments hereinafter mentioned, one Charles W. Houghton was
the president of the said bank, and as such had power and
authority to accept drafts and certify checks drawn upon the
said bank, and to bind the said bank thereby. That on or
about the 31st day of December, 1853, one Thomas Green
drew his draft or check in the words following :

" No.                    *Williamsburgh, Dec.* 31, 1853.
        Farmers and Citizens' Bank of Long Island, pay to
the order of W. A. Cleaveland five thousand dollars.
    $5000.                      .     THOS. GREEN.
            [Good.   C. W. Houghton, Pres."]

And then and there delivered the same to the payee thereof.
That said draft or check was presented to said defendants,

Claflin *v.* Farmers and Citizens' Bank of Long Island.

and that said defendants by their said president accepted the said instrument in writing; and said Charles W. Houghton, so acting as said president, then and there in writing, on the face of said check or draft, certified the same in the words following : " Good. C. W. Houghton, Pres." That said check or draft was indorsed by said payee, and so indorsed, accepted and certified, was by him transferred and delivered to the plaintiffs. That the said draft or check was presented to the defendants for payment, who then and there refused to pay the same, and that the same remains wholly unpaid. For a second cause of action, the plaintiffs alleged that one C. W. Houghton drew his draft or check upon the same bank, dated February 4, 1854, for $5500, payable to the order of W. A. Cleaveland. That the defendants by their said president accepted the said instrument in writing, and said Charles W. Houghton acting as such president then, and in writing on the face of said check or draft, certified the same in the said filling, " Good. C. W. Houghton." That said check or draft was indorsed by said payee, and so indorsed, accepted and certified, was by him transferred and delivered to the plaintiffs. That the said draft or check was presented to the defendants at their banking house for payment, who refused to pay the same, and that the same remains wholly unpaid. For a third cause of action, the plaintiffs alleged the drawing of another draft upon the same bank, by the same drawer, dated February 25, 1854, payable to the order of W. A. Cleaveland, for $10,000. Which check was accepted by said Houghton as president, in the same manner as the others, and certified by him to be " good." And that said check or draft was indorsed by the payee, and so accepted and certified, was by him transferred and delivered to the plaintiffs. That the said draft or check was presented to the defendants at their banking house for payment, who refused to pay the same, and that the same remains unpaid. The plaintiffs averred that said checks were wholly unpaid. Wherefore they

demanded judgment against the defendants for $20,500, and interest.

The defendants, by their answer, denied that Houghton was the president of the bank and as such had power and authority to accept drafts or certify checks upon the bank, or to bind the bank thereby. They also denied the delivery of the several checks to the payee; the presentment thereof to the bank; the acceptance thereof by the bank, by its president; the indorsement by the payee; the transfer or delivery to the plaintiffs; or the presentment for payment, &c.

And for further answer to the complaint, the defendants allege that the several drafts or checks mentioned and described therein, were drawn or made, and if certified, as set forth in said complaint, were certified at the office of the Long Island Water Works Company, Nos. 45 and 46 Merchant's Exchange, in the city of New York, and not at the banking house of the defendants, without authority, and when neither said Thomas Green or said Charles W. Houghton had money or funds on deposit in said Farmers and Citizens' Bank to enable said bank or said defendants to pay the said drafts or checks, or either of them. And that the defendants or said bank were never informed in any manner by said plaintiffs or said Cleaveland, or by any other person, that said several alleged drafts or checks were drawn or certified, as alleged in said complaint, until about the time of the commencement of this action; nor that said alleged drafts or checks were held or claimed in any manner by said plaintiffs, until the service of the said complaint and summons in this action. The defendants further alleged, that the amount of the several drafts or checks mentioned and described in the complaint was paid said Cleaveland in full by said Thomas Green, shortly after the drawing of said drafts or checks by said Green, to said Cleaveland, to wit, before the alleged transfer and delivery of said drafts or checks to the plaintiffs; and at the time of said payment, and oftentimes since, Cleaveland promised to return said drafts or checks to said Green, but ex-

cused himself for not doing so by alleging that said checks were in his box at his residence in Brooklyn. That each and all of the said drafts or checks was or were transferred and delivered by said Cleaveland to the plaintiffs, if the same or either of them was or were transferred or delivered to said plaintiffs, without consideration and for the accommodation of said Cleaveland; and said checks, and each of them, were drawn and delivered respectively by said Greene and Houghton to said Cleaveland, usuriously and in contravention of the statutes of the state of New York against usury, and a sum greater than seven per cent was agreed on and reserved for the money advanced respectively on said drafts or checks; to wit, one eighth of one per cent a day—to wit, nine thousand dollars—to wit, 45⅝ per cent per annum; and the same was accepted and received by said Cleaveland, and he never had any other or different title to said drafts or checks, or either of them.

The action was referred to a referee, who found the following conclusions of fact:

*First.* That the three checks set forth in the complaint were drawn by the respective drawers thereof on the days of their several dates, and severally accepted and certified, indorsed and delivered, as therein alleged. *Second.* That the said checks, at the times they were respectively drawn and delivered to the payee therein named, were so accepted and certified by C. W. Houghton as president of the said bank, and he at the time of such acceptance and certification was the president of the defendants' bank, and as such president authorized by such bank to certify checks drawn upon said bank: such checks were so certified by said Houghton, at his business office in the city of New York, but of that fact the plaintiffs, when they received the same and paid the money thereupon, had no notice. *Third.* The said checks so certified were each of them, on the several days they respectively bear date, delivered to the payee thereof, who, upon receiving them, paid to the respective drawers of them, upon the same

days, the full amount of the face of each check. *Fourth.* The payee of such checks on the same day, of the respective dates of them, respectively indorsed and transferred the same and each of them to the plaintiffs ; and the plaintiffs, when they received the said checks, respectively, paid to the payee thereof the full amount of the face of each check, and that the said plaintiffs so received the said checks in good faith. *Fifth.* The plaintiffs have ever since the said checks were severally passed to them as aforesaid been the actual holders of them and each of them. *Sixth.* On or before the first day of December, 1854, the plaintiffs presented the said checks to the defendants at their bank for payment, and payment thereof was demanded and refused. *Seventh.* The amount of such checks, with interest thereon from the first day of December, 1854, was $26,224.

Upon these facts the referee determined as matter of law, *First.* That the defendants were liable upon such checks by reason of such certification of them by the president of such bank. *Second.* That the plaintiffs were entitled to judgment for $26,224, with costs.

To which findings and conclusions the defendants excepted, and appealed from the judgment entered upon the report.

*Wm. Curtis Noyes* and *John M. Martin,* for the appellants.

*C. O'Conor* and *John E. Burrill,* for the respondents.

*By the Court,* LEONARD, J. An agent cannot, in general, act so as to bind his principal in matters touching his agency, where he has an adverse interest in himself. (*Stone* v. *Hayes,* 3 *Denio,* 575. *Bentley* v. *The Columbia Ins. Co.,* 17 *N. Y. Rep.* 423.) There is an exception in the application of this principle in favor of the holders of negotiable paper acquired in good faith before due, for value, without notice of the misconduct of the agent, or the knowledge of

such facts as would amount to a want of good faith in the taker of such paper.

In the case before us, the interest of Houghton is assumed to be at variance with his duty. His interest was an inducement to him to certify his own checks without funds. It was his duty not to do it. The public, however, cannot be apprised, from the face of the checks, of the existence of this conflict between interest and duty. The president of the bank may have money there on deposit as well as another man. The money being in bank, the certification of his own check would not be adverse to the duty of the president. As between the bank and its own officer, it is entirely clear that such a certification would create no liability. The general authority to certify checks had been conferred by the bank on its president.

The identity between the name of the drawer and the president of the bank who certified the check, did not necessarily inform any one, by the mere force of that fact, that the drawer had certified his own checks without funds in bank. It was possible that he had so done. It was not probable, however; and the usual presumptions of innocence and fair dealing were against the existence of doubts about the conduct of the president of the bank.

The presumption of bad faith, on the part of the plaintiffs, does not necessarily arise from the manner of certification. That fact, with other circumstances, might have brought the referee, or a jury, to the conclusion that there was a want of good faith on the part of the plaintiffs in taking the checks, but the certification in the manner mentioned was not conclusive as evidence to deprive the plaintiffs of the protection afforded to bona fide holders of negotiable paper. (20 *How. U. S. Rep.* 345. *Story on Bills,* § 194. 34 *Eng. L. and Eq.* 131.)

The legal principles respecting the subject of agency, as applicable to the certification of checks, their character and negotiability, and the protection to which bona fide holders

thereof are entitled, are fully considered by the court of appeals in *The Farmers and Mechanics' Bank of Kent Co.* v. *The Butchers and Drovers' Bank*, (14 *N. Y. Rep.* 634, *and* 16 *id.* 125,) and are controlling, as far as they are applicable in the case now before the court.

We agree with the referee, that the defendants cannot now urge any reasons against a recovery arising from the delay occurring before the checks were presented for payment, after having, by objections at the trial, prevented the explanations offered by the plaintiffs in that respect.

The several objections taken during the progress of the trial, to the admission or exclusion of evidence, &c., so far as they were urged at the argument, have been examined, but none of them are considered well taken, and do not seem to require an extended review.

The judgment is affirmed with costs.

[NEW YORK GENERAL TERM, May 6, 1861. *Clerke, Mullin* and *Leonard*, Justices.]