MERCHANTS' BANK OF LINCOLN, NEBRASKA, PLAINTIFF IN ERROR, v. A. C. RUDOLF AND OTHERS, DEFENDANTS IN ERROR.

1. **Principal and Surety:** RELEASE OF SURETY BY CASHIER OF A BANK. A cashier of a bank, by virtue of his office, is not authorized to release a surety upon a note or bill belonging to the bank without payment.

2. ——: ——. The mere fact that a bank holds other security for the payment of a note, to which it might resort, is no ground for the release of a surety.

3. ——: ——. Statements made by a cashier at casual interviews away from the bank as to payments having been made upon its securities, are not binding upon the bank.

4. ——: ——. If the cashier, on inquiry by a surety who is not an officer of the bank, state that the note upon which he is surety has been paid by the principal, the bank is estopped from denying the truth of such statement, when to do so would entail a loss upon the surety, which he would have guarded against had it not been made.

5. ——: ——. But this rule is not applicable where the surety is one of the directors of the bank, for he has the means of knowledge of the true condition of its affairs, and is conclusively presumed to know whether payment has been made or not.

6. ———: ———.    And where a firm is surety, and one of its members is also a member of the board of directors of the bank, all the members of such firm are affected with the notice, which the one who is director is presumed to have.

THIS was an action upon a joint and several negotiable promissory note, signed by Lewis & Marsh and defendants in error, in their firm names, dated Lincoln, Nebraska, September 8th, 1873, for payment to order of plaintiffs of $5,500.00, at Union National Bank, Chicago, Illinois, in thirty-five days after date, with interest at twelve per centum after due.

Lewis, of the firm of Lewis & Marsh, was of plaintiff's board of directors.

Rudolf, of Rudolf & Co, was of plaintiff's board of directors; was its vice president, and one of its committee on discount and exchange.    One George P. Eaton was plaintiff's cashier.

Defendants, L. & M., plead usury; that the note was for the loan of $4,394.25, for thirty-five days only, for which interest was taken and reserved by plaintiff, of $105,75.

L. & M. also plead that certificates of deposit in the sum of $4,347.28 on the Washington bank of Iowa, were by them given plaintiff for collection, with instructions to credit the proceeds on this note, on which certificates the plaintiff collected and realized $4,336.28 that should be credited on such note, and there remains due plaintiff only $1,036.97.

To these defenses there was a denial.

Defendants, R. & Co., plead same defense of usury. These defendants also plead payment; also, that these defendants were sureties only, as plaintiff well knew; that after maturity of the note, L. & M. requested these defendants to become surety on other paper, which they refused to do unless this note had been paid, and for the purpose of ascertaining the fact in that regard, went to

plaintiff's bank, to the cashier there in charge, stating the purpose of the inquiry, and inquired in reference to the payment of the note in suit, and were by the cashier informed, that the note was all paid except a small balance, against which the bank held ample collateral security; and that Eaton, the cashier, at a number of other times, when engaged in the negotiation of business of the bank, to induce these defendants to become surety for L. & M. on other paper, the proceeds of which went to the bank on account of L. & M., said this note had been paid; and that these defendants, in faith of these representations, went upon the paper of L. & M., in the sum of more than $7,692.00, on which they have since been required to pay and have paid sums amounting to $7,692; that these defendants, at the time these representations were made, and for long after, were indebted to L. & M. in the sum of $6,223, from which indebtedness, but for the faith and credit given to such statements, these defendants could and would have saved themselves harmless, and have paid this note; that this indebtedness these defendants paid to L. & M. long before any notice that this note was yet unpaid, and L. & M. before said notice had become utterly insolvent, and these defendants are remediless; that L. & M., after maturity of the note, made large deposits of money and collections with the plaintiff, and that plaintiff took and held ample collateral security from L. & M. for the payment of the note, which might have been by the plaintiff realized and retained, and particularly that just before the note in suit was due L. & M., deposited for collection with the plaintiff certain certificates of deposit of the Washington bank of Iowa, in the sum of $4,347.25, directed to be collected and credited on the note; that plaintiff knew the defendants to be sureties only, and that plaintiff allowed L. & M. to check out their moneys, and also applied the proceeds of the Washington bank certificates

to payment of other indebtedness of L. & M., without consent or knowledge of defendants, and to their prejudice as sureties, depriving them of their right of subrogation; that L. & M. are insolvent and defendants remediless.

Plaintiff replied by denials, and by a special reply alleged a counter estoppel, by reason of Rudolf's official relation to plaintiff.

Upon the trial before WEAVER, J., sitting in the district court for Lancaster county, the following instructions offered by plaintiff in error were refused by the court, and exceptions taken.

"2. The cashier of said Merchants' Bank had a right to receive in payment the money realized from the drafts on the Washington Bank of Iowa; but after the same had been so received by him and applied in part payment of the note in question, the cashier cannot bind the bank merely by what he says in reference to said drafts."

"5. If you find from the evidence that A. C. Rudolf, one of the defendants, was vice-president and director of the Merchants' Bank, and you find by the articles of incorporation of said bank, that the affairs of said bank should be under the control and management of the board of directors, you will find as matter of law that said defendant, A. C. Rudolf, in accepting the office of director assumed a duty to the stockholders and creditors of said bank, to inform himself of what would appear by an inspection of the books of said bank, of which he was one of the ostensible managers, and he cannot plead a want of knowledge as an estoppel. If you find that the books of the bank do not show a payment of said note you will find that the said defendants composing the firm of A. C. Rudolf & Co., cannot set up an estoppel on what George P. Eaton as cashier told them or either of them.

"6.   If you find by the evidence that A. C. Rudolf was a director at the time it is claimed that George P. Eaton told defendants that the note was paid, you will find that he is not in a condition to take advantage of an estoppel *in pais*.   And you will only allow the defendants such offsets or payments as are actually proved.

"7.   A cashier has no power by virtue of his office to bind the bank, by a discharge of its debtors without payment, or to release a security by an agreement that he should not be called upon to pay the note that he was liable on."

"10.   As far as defendants A. C. Rudolf and Julian J. Deck are concerned, having admitted or set up in their answer that the amount realized from the drafts on the National Bank of Washington, Iowa, was not applied in payment of the note, you cannot find as a matter of fact in favor of the said defendants that the same was paid.

"11.   If you find from the evidence that defendants, Lewis & Marsh, owed other indebtedness than the note in question to the plaintiff, and you further find that the moneys realized from the said drafts on the National Bank of Washington, Iowa, were applied to the said individual indebtedness of the said Lewis & Marsh, you cannot apply them to the note in question, for the bank had a right to apply them to the individual indebtedness of Lewis & Marsh."

At the request of said defendants the court, among others, gave the following instructions to the jury, to the giving of which the plaintiff in error excepted.

"1.   If the jury find from the evidence that the proceeds of the certificates of deposit of the Washington National Bank of Iowa were applied upon the note in suit, or were by the plaintiffs or defendants agreed to be so applied then as a matter of law they could not subsequently be applied to the payment of other indebted-

ness of Lewis and Marsh without consent of the defendants (R. & Co). And if the proceeds of the certificates were applied or agreed to be applied upon the note, they will deduct the same from the sum they may find due upon the note in suit, unless they find that the defendants have consented to their being otherwise appropriated."

"3. If you find that the plaintiff, by Eaton its cashier, or otherwise, knew that Rudolf & Co. were sureties upon the note, and if you further find that when the note became due, or at any time thereafter, the plaintiff was the owner of the note, and also had money or securities of the principals, Lewis & Marsh, in its possession or under its control elsewhere, and allowed Lewis & Marsh to check out or remove the money or securities beyond its control, without the consent of Rudolf & Co., then the sureties, Rudolf & Co., are entitled to a credit upon the note for the value of such money or securities; and if the amount or value of such money or securities, at any time in the control of the plaintiff, equal or exceed the amount due upon the note, then you will find for the defendant, Rudolf & Co., and against the plaintiff."

"6. The declarations and admissions of the cashier made in the conduct of the business of the bank, and as a part of the transaction, are evidence against the bank. The weight and credibility of such evidence being for the consideration of the jury."

Upon these instructions, and the evidence, the jury returned a verdict for the defendants Rudolf & Co., and against defendants Lewis & Marsh. Judgment on the verdict. Motion for a new trial overruled, and cause brought here by plaintiffs upon petition in error.

*Cobb, Marquett & Moore,* for plaintiff in error.

1. A cashier has no power to release a debt of the

bank. *Hodge's Exr. v. National Bank*, 22 Gratt., 51 A., 25 U. S., p. 80, sec. 14. *Olney v. Chadsey*, 7 Rhode Island, 224. *U. S. v. City Bank of Col.*, 21 Howard, 358. *Peninsular Bank v. Hanmer*, 14 Mich., 208. Daniels on Negotiable Notes, 297, 299, sec. 395 and 396, p. 297, sec. 392. *Cochecho National Bank v. Haskell*, 51 N. H., 116.

2. The assurance that the bank had collateral securities and the defendants would not be called upon to pay the debt is in the nature of an agreement to discharge the surety, and is not within the scope of the cashier's authority. *Cochecho National Bank v. Haskell*, 51 N. H., 116. 12 American Reports, 67–74.

3. The court erred in refusing to give the seventh instruction asked for by plaintiff.

4. But for the sake of the argument we will admit that the representations of "Eaton" cashier—that that portion of the debt not claimed to be paid was secured, and that A. C. Rudolf & Co. would not be called upon to pay it, would constitute a defense in favor of a third person who had no knowledge or means of knowledge to the contrary.

5. It is admitted that A. C. Rudolf was vice-president, and was a director in the Merchants' Bank. He had the ready means, and it was his duty to know just how the matters stood between Lewis & Marsh and the bank. *Martin v. Zellerbach*, 38 Cal., 300. *Speck v. Riggin*, 40 Mo., 405. Bigelow on Estoppel, 480. Morse on Banking, 91.

6. As a director of a bank, A. C. Rudolf, on well settled principles of public policy, would not be allowed to hold himself out to the world as a director or manager of an institution, and when sought to be made liable to the people or creditors of the bank, avail himself of his ignorance to repudiate his or his agent's acts. *Carrier v. Hilton*, 1 Curtis C. C. R., 390. *Lefever v. Lefever*, 30

N. Y., 27.  *Gillet v. Phillips*, 13 N. Y., 117.  Bigelow on Estoppel, 532.

*J. R. Webster* and *L. C. Burr*, for defendants in error.

Although Rudolf, one of the sureties, was a director and a member of the committee of discount and finance, the relations of both these defendants were that of sureties only.  The same principles of law are applicable as to any other customer or creditor of the bank.  The surety, Rudolf, is not proven to have aided or counseled the discount in any manner.  Having affixed his name to the paper it was taken to the bank by L. & M., it was discounted for L. & M., the proceeds went to their credit.  For all the purposes of this paper, Rudolf conducted himself strictly as any outside customer, as was his duty.  Morse on Banking, 99.

This being the case, the evidence of the defendants, Rudolf and Deck, was properly admitted, as were the declarations of Eaton, the cashier, for two purposes: *First.* Tending to prove that the note had been paid; and, *Second.* Tending to prove that for some part of the note, $4,337.28 at least, the principals had provided a fund for its payment which, in violation of the rights of the sureties, and without their consent, had been applied to payment of other indebtedness of L. & M., the principals.

The declarations of the cashier, or the president, made in the course of the business of the bank, and pertinent thereto, are admissible against the bank.  Morse on Banks, 170 to 180.  *Sturges v. Bank of Circleville*, 11 Ohio State, 154.  *Harrisburg Bank v. Tyler*, 3 Watts & S., 373.  *Bank of Monroe v. Field*, 2 Hill, 445. *Cochecho Bank v. Haskell*, 12 Am., 72.  S. C., 51, N. H., 116.  *Bank v. Klingensmith*, 7 Watts, 523–24.  *Hickok v. Farm. & Merch. Bank*, 35 Vt., 476, 485–6.

These defendants claim that the declarations and proofs contain all the elements of an estoppel.

1.  The cashier was not the agent of the defendant, Rudolf, in making them.  *First.*  Because Rudolf, for the purpose of this paper, was not, and could not be, of the board of directors, as before shown.  *Second.*  The cashier is not the agent of the board of directors even though they choose him, but is the agent of the bank. *Bissell v. First National Bank*, 69 Penn. State, 415. *Bank of Kentucky v. Schuylkill Bank*, 1 Pars. Sel. Cases, 180.  2 U. S. Dig., 1st Series, 546, § 757.

To defeat an estoppel it is not enough that the party setting it up had means of knowledge, except possibly where the parties stand in the *same relation to the fact.* Bigelow on Estoppel, 467.  *Wannell v. Kem*, 57 Mo., 478.

As applicable to the case claiming an estoppel, defendants cite *Merchant's National Bank v. State National Bank*, 10 Wall., 604.  Bigelow on Estoppel, 412, and cases cited.  *Cochecho National Bank v. Haskell*, 12 Am., 72, and note.  If, therefore, the verdict in this case be taken as founded upon an estoppel, and as contrary to the fourth instruction, this court will not therefore set it aside.  If the instruction be wrong and the verdict be right, a new trial will not be granted.  *Tilman v. Stinger*, 26 Ga., 171.  *Vanuxen v. Rose*, 7 Ind., 222.  *Cameron v. Watson*, 40 Miss., 191.

LAKE, CH. J.

It is very clear that this judgment is erroneous and should be reversed.  According to the most favorable view that could possibly be taken of the case, for the defendants, as made by the pleadings and evidence, the jury should have returned a verdict against the defendants in error for at least the sum of seven hundred dollars.

It was not alleged, nor was there any evidence to show, that any payment had been made upon the note; and the jury, as to Lewis & Marsh, the principals, found there was not. If the note as to Lewis & Marsh had not been paid either in whole or in part, the same was true, also, as to the other defendants. The truth is, that the verdict can be accounted for only on the theory advanced by Rudolf and Deck in their answer, that they were released from their obligation to pay the note by the promise of Eaton, the cashier of the bank, that he would look alone to other securities which he held for payment, and that they "need take no further trouble, and feel no apprehension in reference to said note."

But, conceding that this assurance was given, it cannot avail these defendants. It is well established law, that the cashier of a bank has no authority by virtue of his office to release a surety upon a promissory note or bill, without payment, unless specially empowered to do so. *Cochecho National Bank v. Haskell*, 51 N. H., 116; *Bank of United States v. Dunn*, 6 Pet., 51. And this authority will not be presumed, but must be established by affirmative proof. Therefore, there being no testimony tending to show that Eaton had any such authority from the board of directors, this pretended release was unavailing.

Another theory advanced in support of the verdict is, that Rudolf and Deck were led to believe by the statements of the cashier that the note was paid, whereby they were induced to part with securities which they would otherwise have held on to for their protection. But, unfortunately for the defendants, this theory is not supported by the facts. All that they claim in their answer on this score is that Lewis & Marsh having requested them to become sureties "upon other notes, which these defendants would not do unless said note here in suit had been paid, and inquired of said Eaton,

then being cashier as aforesaid, relative thereto, &ast; &ast; said Eaton informed these defendants that all of said note, but about the sum of seven hundred dollars had been paid by said Lewis & Marsh, and that plaintiff had good collateral security for the balance thereof, to which it would look for payment." Thus, it is clearly conceded, that as to at least the sum of seven hundred dollars the note had not been satisfied; therefore, even upon the theory that the bank is liable for the loss occasioned by the deception practiced by its cashier, still they were liable for the amount which they must have known was unpaid. The fact that the bank held other security, in addition to their indorsement, would not release them from liability for this portion of the amount called for by the note.

But, even under the facts established by the testimony, independently of the defendants' answer, there is no reason why they should be released entirely from liability. Although deprived of the testimony of the cashier, as against the defendants, by reason of his impeachment, still there is nothing in the testimony produced on the part of the defendants themselves, as to the declarations made concerning the payment of the note, which, in reason, could have justified the belief that it had been paid in full.

Rudolf, one of the defendants, first took the witness stand and testified that Lewis & Marsh having told him that the note was paid, in order to satisfy himself of the truth of the statement, he went over to the bank and made inquiry of Eaton, who told him "that Lewis & Marsh had paid into his hands, as cashier of the bank, drafts on the Washington County Bank of Iowa, in the neighborhood of $5,000.00 to be placed on the credit of this note which is now in suit."

Again, on cross-examination, he says: "I asked Geo. P. Eaton whether this first note was paid, and he said it

was; that Lewis & Marsh had handed into him drafts upon the Washington Bank, Iowa, to be placed to the credit of this note. I asked George P. Eaton in these words: Well, Mr. Eaton, that does not liquidate the whole amount? George P. Eaton answered in these words: I have sufficient collaterals in my hands. I think he said mortgages in my hands, sufficient to cover the whole amount of that note." He further testified in answer to the question as to where Eaton got the money. "He did'nt get the money, he only got the drafts. It was during the time of the great financial panic."

This is the substance of the testimony given by Rudolf, who seems to have been the chief actor in this business on the part of the defendants in error. It is clear from this testimony, that they not only had no reason to believe, but that they did not understand at the time *this* conversation took place that the note had been satisfied nor, indeed, that any payment had been actually made thereon. Rudolf was at this time the vice president and one of the directors of the bank, and he must have understood from the conversation, simply, that these Washington County Bank certificates had been received for collection merely, and the proceeds when collected to be credited upon the note on which his firm was surety. At all events this was all he had a right to infer from what he swears Eaton told him.

Mr. Deck, the other defendant, testified on this point that, " On or about the 15th of November, 1873, I went to Mr. Eaton's bank and asked of George P. Eaton, about this note, if it was not paid; and that I wanted to make some arrangement for the payment of the note if it was not paid. He told me the note was all paid except $700.00; that he had perfect security for the payment of the note that was given, and for us to have no fears about the payment of it, and that we would not be called upon to pay the note. I asked him for the note

to see the indorsement, and he said it was not at hand."
Again, on cross-examination he said: "I went in there
and asked him (Eaton) if the note was paid, and he told
me the note was paid except the seven hundred dollars."
It is apparent from this that even Mr. Deck understood
that his firm was still liable on the note for the balance
of seven hundred dollars, but rested easy under the as-
surance of Eaton that the bank would not look to his
firm, but to other securities which it held, for payment.
But, as before stated, this was a promise which Eaton
had no power to make, and by which the plaintiff was
not bound.

Two or three of the witnesses testify of statements
made by Eaton, at casual meetings, away from the bank,
to the effect that the note was paid, or at least nearly so.
But statements of a cashier, under such circumstances,
have never been held to bind a bank.

But a still more important and difficult question re-
mains to be disposed of, and that is, whether, under any
circumstances, Rudolf and Deck can be released from
liability on the note for the full amount that may be
found to be due, in consequence of any statements that
the cashier made to them.

There is testimony tending strongly to show that, on
making inquiry at the bank, of the cashier, they were
told by him that all of said note but about the sum of
seven hundred dollars was actually paid, and that, in
consequence of this assurance, they were induced to go
upon other notes, as surety for Lewis & Marsh, to a large
amount, which they were compelled to pay. Also, that
they surrendered to Lewis & Marsh a large quantity of
property from which they would have fully indemnified
themselves against loss in consequence of being com-
pelled to pay the note, but for the belief induced by the
false statements of the cashier that all but about seven
hundred dollars had been paid. Although there is some

conflict in the authorities, it seems to be pretty well established that, in general, under such circumstances, the loss, if any, must fall upon the bank rather than upon the surety. The bank would be estopped from denying the truth of the statement of its cashier, when to do so would entail a loss upon the surety which he would have guarded against had it not been made. *Drew v. Kimball*, 43 N. H., 282. *Claflin v. Farmers' Bank*, 36 Barb., 540.

But while this is conceded to be the general rule, it is urged on the part of the plaintiff that these defendants are not in a situation to claim its protection in consequence of the relations which Rudolf bore to the bank, and also to his co-defendant, Deck. It is insisted that, being the vice-president, and one of the directors of the bank, he was in a situation which required him to *know* the condition of its business, and must be conclusively presumed to have known whether said note had been paid or not. No case directly in point has been cited, but we apprehend that the rule contended for is the correct one. In Morse on Banks and Banking, 90, 91, it is said that "The general control and government of all the affairs and transactions of the bank rest with the board of directors. For such purposes the board constitutes the corporation," and, "uniform usage imposes upon them the general superintendence and active management of the corporate concerns. They are bound to know what is done, beyond the merest matter of daily routine, and they are bound to know the system and rules arranged for its doing." Again, on page 115: "Whatever knowledge a director has, *or ought to have*, officially, he has, or will be conclusively presumed at law to have, as a private individual. In any transactions with the bank, either on his own separate account, or where others are so far jointly interested with him that his knowledge is their knowledge, he and his joint con-

tractors will be affected by this knowledge which he has or which he ought, if he had duly performed his official duties, to have acquired." *Lyman v. United States Bank*, 12 How., 225.

Tested by this rule, how stand these defendants? Rudolf and Deck were co-partners, and as such signed the note in question. It is a settled rule that notice to one member of a firm is sufficient to bind all the other members. Rudolf was also an active member of the board of directors of the bank, and it was his duty to know whether this note was paid or not. The conclusive presumption is that, as a director, he knew it was not paid, and this knowledge is chargeable to him as a private person, and also as a member of the firm of A. C. Rudolf & Co.

When Rudolf testifies that he did not know that this note had not been paid "until the early part of October, 1874," about a year after its maturity, we think he shows an inexcusable carelessness and want of attention on his part, as a member of the board. The books and papers of the bank were subject to his inspection, and a proper examination of these could not have failed to disclose the deplorable condition of its finances, and that this very note was among its uncollected assets.

We are of the opinion, therefore, that any defense founded upon the statements of the cashier, as to the payment of said note, is entirely unavailing to these defendants, and that the several rulings of the district court which conflict with these views are erroneous. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.