Grant v. Cropsey.

PATRICK J. GRANT, PLAINTIFF IN ERROR, V. ANDREW J. CROPSEY ET. AL., DEFENDANTS IN ERROR.

1. **Estoppel.** It is a firmly established rule that, when one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.

2. ———: DECLARATIONS BY BANK CASHIER. And the above rule is not changed as to the declarations of the cashier of a bank respecting the payment of a note held by the bank, made to an indorser, and on which the cashier is also an indorser. As between the bank and the indorser to whom such declarations are made, if a loss has been occasioned thereby the former must bear it.

3. **Practice:** JURY TRIAL: DIRECTING A VERDICT. If there be any testimony before the jury, by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it, and direct a verdict against him. And the converse of this is also true.

ERROR from the district court for Lancaster county. The facts are fully set forth in the opinion.

*T. M. Marquett*, for plaintiff in error.

1. Declarations of a cashier made in the course of business of the bank, and pertinent thereto, are admissible against the bank. *Merchants Bank v. Rudolf*, 5 Neb., 540. *Drew v. Kimball*, 43 N. H., 282. *Claflin v. Farmers Bank*, 35 Barb., 540.

2. The court erred in ruling out the evidence, and in striking out a portion of the petition showing what was represented by the cashier at the time the note was given, this evidence would have shown *fraud*. *Munson v. Nichols*, 62 Ill., 111. This evidence would at least go to show that the surety had a right to be-

lieve what the cashier told him about the payment of the note.   *Robertson v. Nicholson*, 34 Mich., 129.

2.   The bank, in ratifying the act of its cashier in reference to the execution and delivery of said note, ratified all his acts and are bound by them.

*Brown & Marshall*, for defendant in error.

1.   The bank was not bound by the statements alleged to have been made to Grant by his co-security, F. E. Atwood, because at the time such statements were alleged to have been made, Atwood's interest was adverse and hostile to the interests of the bank, and Grant knew that fact, and therefore had no right to rely on the alleged statements of Atwood.   Atwood's interest being adverse to the interest of the bank, and Grant, having knowledge of that fact, had no right to rely on Atwood's representations, and under such circumstances Atwood's representations could not bind the bank, because Atwood was representing his own interests in his statements to his co-surety, and not the interests of the bank.   Story on Agency, Sec. 210, p. 262.   Morse on Banks and Banking, pp, 39, 40, and 186.   *Stone v. Hayes*, 3 Denio, 575.   *Ritt v. Wash. Fire Ins. Co.*, 41 Barb., 353.   *McDonald v. Lord*, 26 How. Pr., 404.   *The Bank of U. S. v. Dunn*, 6 Peters, 51.

The fact that the only money Grant held and parted with to Schutt and Polly was a trust fund which he held as one of the trustees of the Roman Catholic Church, would preclude Grant from retaining that fund or setting it off against a personal claim of his own.   Grant was only one of the board of trustees, and even if sole trustee could not retain or set off his personal claim against a demand on a trust fund, for they were not mutual and in the same right.   Therefore, in parting with the trust fund, Grant parted with no right or

values out of which he could have indemnified himself on the note. He was not damaged because he could not avail himself in this way out of a trust fund. Waterman on Set-off, Sec. 133, *et sequitur;* particularly Secs. 173 and 174. Smith's Leading cases, vol. 2, p. 306, and cases there cited. *Prewett v. Marsh,* 1 Stewart & Porter (Ala.), 17. *Irwin v. Harris,* 6 Iredell (N. C.) Eq., 215.

3. Grant not having been damaged by any representations alleged to have been made by F. E. Atwood, the teller of the bank, to Grant, his co-security on the note, the bank was not estopped from denying that the note had been paid. Hermann's Law of Estoppel, sec. 323, *et sequitur.* *The Welland Canal Co. v. Hathaway,* 8 Wend., 480; 18 Wend., 843. *Dezell v. Odell,* 3 Hill (N. Y.), 222.

4. As there was no testimony which tended to establish the fact that Grant ever had in his possession or under his control any money or values which he could have applied toward the payment of the note, or to indemnify himself as surety thereon, the court did not err in refusing to give the instructions asked for by the defendant Grant. Wait's (N. Y.) Practice, vol. 3, p. 181, and cases there cited. *Besson v. Southard,* 10 N. Y., 236. *Herring v. Hoppock,* 15 N. Y., 409–412. *Matthewson v. Burr,* 6 Neb., 312.

LAKE, J.

This was an action on a promissory note executed to the Lancaster County Bank for a loan of money by Schutt & Polly as principals, and F. E. Atwood and Patrick J. Grant as accommodation makers. In this transaction with the bank, Atwood acted also on behalf of the bank, he being at the time its acting cashier.

Service of summons was had upon Grant alone, who in his answer set up as his second defense, in substance,

that some time after the note matured, having in his hands and under his control sufficient money belonging to Schutt & Polly, who were then and still are insolvent, with which to pay the note and save himself harmless against loss, he went to the bank and enquired of the cashier about the condition of the note, stating the fact of his having the money of Schutt & Polly within his control, and was there told that it was fully paid. That believing this statement to be true, and acting upon it, he paid over to Schutt & Polly the money which he so held, and out of which he would have secured himself but for the information so given him by the cashier of the bank. That these facts, if true, make a complete defense to the action, must be conceded. The rule has been long and firmly established, that where one by his words or conduct wilfully causes another to believe in a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. *Pickard v. Sears*, 33 Eng. Com. Law Repts., 257. *Davis v. Handy*, 37 N. H., 65. *Merchants Bank v. Rudolf, et al.*, 5 Neb., 527.

On the trial to a jury, Grant testified that after the note matured, he went to the bank during business hours for the purpose of ascertaining whether it were paid, and was told by the cashier that it was fully "satisfied", and that "he would destroy it." It is true that he also swore, that on one occasion the cashier told him that "*it would be satisfied,*" so there is some doubt as to just what the cashier did say. This, however, was a matter for the jury to settle. That Grant had under his control at this time money enough to have secured himself, and which he afterwards paid over to Schutt & Polly, was fully established. And it was conceded that the latter were insolvent, as alleged by

Grant in his answer. Such being the defense, and this the testimony to support it, was the court justified in directing the jury to return a verdict against the defendant? This is the main question for our decision.

On this point the law doubtless is, that if there be any testimony before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it, and direct a verdict against him. And the converse of this is true. In *Hendrick v. Lindsay*, 3 Otto, 143, on a question analogous to this, it was held that in the absence of any testimony whatever to contradict or vary the case as made by the plaintiff, it is not error, when the legal effect of the plaintiff's evidence warrants a verdict for him, to so direct the jury. And this rule now obtains very generally. *Improvement Co. v. Munson*, 14 Wall., 442. *Demyer v. Souzer*, 6 Wend., 436. *Cutler v. Hurlbut*, 29 Wis., 152.

But in order to avoid the effect of this rule, it was urged with much earnestness that inasmuch as Atwood, the cashier, was one of the makers of the note, having an interest "adverse and hostile to the interest of the bank," the latter was not bound by his statements concerning its payment. This, at first blush, may seem somewhat plausible, but on reflection it will be seen that although Atwood was a co-maker he could have no possible interest in the release of Grant, when its only effect would be to throw the whole burden of paying the note upon himself. His statements, although having the effect, under the circumstances, of releasing Grant, could by no possibility benefit himself in the least degree. The note would still be unpaid, his liability thereon would continue, but the right to demand contribution would be gone. We think that on this question the interests of the bank and of Atwood were identical.

16

But even if their interests were really hostile, we fail to see any good reason for relieving the bank from the loss, if any loss has been caused by the falsehood of its cashier. The bank directors knew, or were bound to know, of the discounting of this note, and who were the makers. They permitted the cashier to stand in the double attitude of joint debtor and agent for the collection of the debt. The knowledge of the directors as to his attitude and "interest" was at least equal to that of Grant, and having this knowledge, if they continued him in a service whereby he could and did falsely make the statements imputed to him, occasioning a loss, there is certainly no good reason for saying that Grant, rather than the bank, shall bear it. We are of opinion that the ordinary rule is not varied by the circumstances of this case, and that the loss should be borne by the bank, if the allegations of the answer in this regard are proven.

It was also contended that even if the bank were held to be bound by Atwood's statements, still Grant could not escape liability, inasmuch as the money which he parted with belonged to the Roman Catholic Church, and having been placed in his hands as trustee for the purpose of paying Schutt & Polly for repairs done by them on the parochial house, could not be set off against a personal claim of his own, consequently he had suffered no damage whatever. But conceding all that is claimed as to the character of this fund, and Grant's connection with it, and even if he had no authority from Schutt & Polly to so apply it, still by resorting to legal measures he most certainly could have made it available as an indemnity against loss in consequence of having signed said note.

We are of opinion, therefore, that there was testimony which ought to have been submitted to the jury, under proper instructions, and that in holding other-

.wise and dictating the verdict, there was error. The judgment is reversed, and a new trial awarded.

REVERSED AND REMANDED.

COBB, J., having been of counsel in this case, did not sit.