KIRKENDALL, JONES & CO. v. E. F. DAVIS, SHERIFF.

FILED JUNE 26, 1894.    No. 5334.

1. **An assignment of error,** as to the admission of incompetent, irrelevant, and immaterial evidence at the trial of a cause, will not be considered in this court unless the particular rulings so claimed to be erroneous are specifically pointed out in an assignment of error in the petition in error.

2. The verdict of the jury on the trial of a cause, based upon conflicting testimony, will not be disturbed by this court unless manifestly wrong.

3. **Estoppel:** SALES: ATTACHMENT: REPLEVIN. Where a stock of boots and shoes were ordered shipped to a firm, unknown to them, by one claiming to act as their agent, but who was in no way authorized so to act, and such firm received and paid the freight on said stock, and, after holding them for about thirty days, allowed the party so ordering the goods to remove them from their store and to another town, and a creditor of a firm, of which such party was formerly a member, attached the goods, and upon inquiring of the firm making the original shipment was told by a member of the firm that they claimed no title to the goods, and they would make no interference in the attachment proceedings and further advised the prosecution of the attachment proceedings to judgment and sale, *held*, that such statements made to the representative of the attaching creditors, where he, on the strength of said statements, incurred in their behalf additional expenses in prosecuting the proceedings in attachment, worked an estoppel of the shipper of said goods, and concluded the firm from setting up a title to them in a subsequent action of replevin to recover the possession of the goods from the officer holding them by virtue of the levy of writs issued in said attachment proceedings.

ERROR from the district court of Gage county. Tried below before BROADY, J.

*Griggs, Rinaker & Bibb*, for plaintiffs in error, cited: *School District v. Randall*, 5 Neb., 411; *Hoitt v. Holcomb*, 3 Foster [N. H.], 554; *Hardman v. Booth*, 1 H. & C. [Eng.], 893; *Dean v. Yates*, 22 O. St., 389; *De Nayer v. State Nat. Bank*, 8 Neb., 104; *Strauss v. Minzesheimer*, 78 Ill., 493; *Behrens v. Germania Fire Ins. Co.*, 19 N. W. Rep. [Ia.], 839; *Powell v. Rogers*, 105 Ill., 318; *Reed v. Bagley*, 24 Neb., 336.

*R. W. Sabin*, contra, cited: *Heyn v. O'Hagen*, 26 N. W. Rep. [Mich.], 861; *Sandwich Mfg. Co. v. Shiley*, 15 Neb., 109; *Meister v. Birney*, 24 Mich., 435; *Goodman v. Kennedy*, 10 Neb., 273; *Bardwell v. Stubbert*, 17 Neb., 485.

HARRISON, J.

This is an action of replevin commenced in the county court of Gage county, and, from a judgment there rendered, appealed to the district court.  The relief sought was to obtain possession of eleven boxes of boots and shoes and slippers, of the alleged value of $379.54, which had been seized by the defendant, the sheriff of Gage county, by virtue of a writ or writs of attachment.  The petition filed was in the usual form.  Defendant, for answer, filed a general denial as to all the allegations of the petition, excepting the one as to the value of the property.  There was a trial to the court and a jury, a verdict for defendant.  Plaintiffs filed a motion for a new trial, which was overruled, and judgment rendered for defendant, to reverse which the plaintiff has prosecuted petition in error to this court.

One assignment of error, which is argued by counsel for plaintiffs in error in brief filed, is that the court erred in overruling the objection of plaintiffs to incompetent, irrelevant, immaterial evidence offered by the defendant.  It has been held that it is sufficient, in a motion for a new trial, to assign an alleged error in the admission or exclusion of testimony in this general manner. (See *Labaree v. Klosterman*, 33 Neb., 156, and *Davis v. Getchell*, 32 Neb., 808.)  But in both of these cases it is further held that such an assignment of error is not proper or permissible in a petition in error; that in the latter the particular rulings which are claimed to be erroneous must be pointed out specifically.  The above assignment of error is too general and does not entitle the plaintiffs in error to have the errors in admitting the testimony, if any, reviewed.

The only other assignment of error which is argued and insisted upon is, that the verdict is contrary to the evidence and the law.  The evidence disclosed that one J. W. Wright was negotiating with the firm of Le Gros, Bigelow & Co., of Lincoln, Nebraska, with a view to becoming a member

of the firm; that during the time that the negotiations were in progress he went to Omaha and ordered the goods in controversy of the plaintiffs, stating that he was buying for Le Gros, Bigelow & Co., and ordered them forwarded to the firm, which was done. The goods were received by Le Gros, Bigelow & Co. at their place of business in Lincoln, and the freight paid by the firm, although the testimony further shows that they did not understand why the goods should have been shipped to them, and that in a conversation between members of the firm, in reference to the goods while they were on the sidewalk, where they had been deposited by the drayman when brought from the depot, one of them remarked that they probably were goods which had been ordered by Wright. The boxes containing the goods were taken into the store-room of the firm and there placed with some other boxes of similar goods belonging to Wright, which he had been allowed to store there and were not opened. Soon afterwards the negotiations between the firm and Wright were broken off and Wright took his departure for Horton, Kansas, to which point he shipped the goods which had been stored in the room of the firm, including the cases of boots, etc., in controversy in this suit. In the meantime the Lincoln firm had notified plaintiffs of the receipt of the goods, and the further fact that they had not ordered them; but they allowed Wright to remove them, interposing no objections to such action on his part. We think, unquestionably, that the manner in which the goods were obtained by Wright from plaintiffs constituted a fraud as against them, for he very clearly had no authority to order them as he did, in the name of or for Le Gros, Bigelow & Co.; and further, that it is fair to conclude that the order was so given on his part with the purpose and intent of thus obtaining possession of the goods, and without paying for them; and the title to the goods did not pass but remained in plaintiffs, and they could pursue the goods and take them by replevin, if found

in specie, from Wright or from the attaching creditors; and if they had not, by their words or actions, destroyed this right, it existed at the commencement of this suit. A Mr. White, who represented one of the attaching creditors of Wright & Flanagan, at whose instance the writ levied upon the goods, and upon which the sheriff's right to hold them was predicated, gives the following evidence:

Q. After you had caused the goods to be attached, did you go to Omaha and see Kirkendall, Jones & Co.?

A. Yes, I did. I made two trips. I did not see them the first time. I went to ascertain from them whether he was going to lay any claim for the goods or whether they would fight me on an attachment suit. Mr. Coe said: "We have nothing to do with this case. We shipped those goods to Le Gros, Bigelow & Co., and they are their goods, and we shall collect from them when it is due;" and he said: "My advice is to go right on and sell them. We have nothing to do with that. They have held the goods there for thirty days, and we shall collect from them when it is due."

Q. What was said about Le Gros receiving and paying the freight on them?

A. He said: "He has received the goods and paid the freight and we have nothing to do with them. The title has passed from us."

Q. What did you do? *

A. I came right back and commenced proceedings here.

Q. Did you go to any expense after that towards going ahead with the proceedings?

A. I paid out quite a lot of money.

Plaintiffs object to that and ask to have that answer stricken out. Objection overruled. Exception taken.

Q. About what expense did you cause to be done and were you put to by reason of their telling you to go ahead?

Objected to, as immaterial, incompetent, and irrelevant. Objection overruled. Exception taken, for the reason stated.

23

A. I think—my recollection of it is that I paid out in the neighborhood of $30 after that.

Q. Did you make a trip back to Beatrice and give instructions in relation to it at that time?

A. Yes; I made two trips.

Q. I mean after you had seen Mr. Coe and had this conversation. Did you then go back to Beatrice?

A. Yes; I did go back to Beatrice.

Plaintiffs move to have that stricken out. Motion overruled. Exception taken.

Q. Do you know whether the goods had been advertised for sale when you got back?

A. Yes; they were advertised before I got back. I came on to attend the sale. It was some time in June then.

Q. You went on to see Kirkendall & Jones, to see if it was safe to go ahead?

A. Yes; I went to see what grounds I stood on before I incurred any expenses.

Q. Did you tell them what you had found?

A. Yes; that I had found eleven cases of goods, and he said we sold those goods to Le Gros, Bigelow & Co. and shall look to them for the pay.

The member of the firm of plaintiffs with whom this conversation is testified to have occurred states that he saw and talked with Mr. White, but denies the substance of the conversation as related by him. In other words, there was a direct conflict of the testimony upon this point. The jury were instructed on this branch of the case: "The court instructs the jury that if they believe from the evidence that the plaintiffs Kirkendall, Jones & Co. informed Geo. H. White, the agent for the attaching creditors of Wright & Flanagan, after the goods were attached, that they, the said plaintiffs, had no claim on the goods in controversy, and that they had sold the goods to Le Gros, Bigelow & Co. and looked to them only for payment, and advised the said White, as the agent for the attaching creditors, to go

ahead and sell the goods to satisfy the claim of the attaching creditors, and upon the strength of what the said plaintiffs told the said agent, White, the attaching creditors did go ahead and get judgment and caused an order of sale to be issued by the county court of Gage county, and caused the said goods to be advertised for sale, and by reason of said advice to said plaintiffs went to an additional expense in the way of costs, expenses, and attorney's fees, then, in that case, the court instructs you that plaintiffs are estopped from claiming said goods from defendant and the jury should find for the defendant." The jury solved the question, or made a finding on the conflicting evidence on this point in favor of defendants, and in accordance with a well settled rule of this court, it will not be disturbed or reversed.

The further query then arises, whether the statements made were sufficient in law to conclude the plaintiffs from claiming a different condition to have existed at the time of the conversation? The rule announced in *Grant v. Cropsey,* 8 Neb., 205, and again in *Newman v. Mueller,* 16 Neb., 523, is as follows: "It is a firmly established rule that when one, by his words or conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." (See, also, *Betts v. Simms,* 25 Neb., 166; *St. Louis Wrought Iron Range Co. v. Meyer,* 31 Neb., 543; *Blodgett v. McMurtry,* 34 Neb., 782.) In *Meister v. Birney,* 24 Mich., 440, it is stated: "Expenditures in litigation may as reasonably constitute the basis of an estoppel as any other expenditures." It being established that the statement of the plaintiffs that they had no claim to the goods, and advising the defendant to proceed with the attachments, induced them to so proceed and to incur further expenses in so doing, it was, we think, sufficient to estop them from being heard to allege and assert

title to the goods, recover them in this action, and thus not only lose to the defendant their lien on the goods acquired by the attachment as a fund or means of payment of their claims, but also cause the loss of the costs and expenses of litigation incurred after such statements. The judgment of the district court is

AFFIRMED.