GERMAN SAVINGS BANK v. HENRY W. WULFEKUHLER.

1. BANK; BANK OFFICER; *Knowledge; Presumption.* A person who holds the office of director and vice-president of a bank, and at the same time has private and personal dealings with the bank, is conclusively presumed to know, (so far as the same affects his said personal dealings,) the general condition and management of his bank, and to know everything of importance that occurs therein, either at the time it occurs, or soon thereafter.

2. ———— *Overdrawn Accounts.* Such bank officer is bound to know when his bank is in an embarrassed condition, and the condition of an account which has been overdrawn for several months; and where the cashier gives a credit to a person having such overdrawn account, for an insufficient and illegal consideration, such officer is bound to know the same within less than several days thereafter.

3. BANK STOCK; *Purchase by Bank.* A bank organized under the laws of Kansas, cannot purchase its own stock, except in some cases for the purpose of securing a previously-existing debt.

4. ———— Where W., a stockholder, and also a director and the vice-president of such bank, sells his stock of such bank, while the bank is in an embarrassed condition, to H., who has no funds in the bank, but on the contrary has an overdrawn account with the bank of several months' standing, and W. receives in payment for his stock a check for $2,100, drawn by H. on the bank, and H. then sells said stock to the cashier of the bank, who purchases it for the bank, but who has no authority from the bank or from any one else to purchase the same for the

bank, and the cashier gives to H. a credit for such stock for $2,100, on the books of the bank, and on the same day the cashier gives to W. a credit on the books of the bank for the amount of said check, and charges H. with a like amount, and several days thereafter W. draws said amount of $2,100 out of the bank, *held,* that the bank may maintain an action against W. for the amount of money so drawn out of the bank by him.

5. ———— And it makes no difference that said stock may in fact have belonged to W. and his brother, as partners, and that all the transactions in selling said stock, in getting said credit, and in drawing said money out of the bank, may have been carried on in the name of the firm.

6. ———— *Cashier; Estoppel.* The acts of the cashier in said transactions cannot estop the bank as against W., who is a director and the vice-president of the bank.

### *Error from Leavenworth District Court.*

ACTION by the *German Savings Bank,* as plaintiff. Trial, and judgment in favor of defendant *Wulfekuhler,* at the November Term 1874. The plaintiff brings the case here. The facts are stated in the subjoined opinion.

*F. P. Fitzwilliam,* for plaintiff.

*Green & Foster,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the German Savings Bank of Leavenworth, against Henry W. Wulfekuhler, for the sum of $2,100, alleged to have been obtained wrongfully from the bank by the said Wulfekuhler. Judgment was rendered in the court below in favor of the defendant, and the bank now brings the case to this court. The principal facts of the case are as follows: The bank was organized under the laws of the state of Kansas; the defendant was one of the original incorporators, and a subscriber for 100 shares of the capital-stock of the bank; each share was for $100. He paid two assessments on said shares — each assessment being ten per cent. of the amount — and received two receipts therefor, each receipt being for $1,000. No certificates of stock were ever issued to him; and these receipts were the only evidences of

his ownership of said stock which he ever held. The books of the bank however, furnished other and sufficient evidence of his ownership of said stock. He was a director of the bank, and also its vice-president, during the occurrence of all the following transactions, although at the time of said occurrence he was sick, and did not take any active part in the direction or management of the business of the bank. Also, during the same time he and his brother, Fred. Wulfekuhler, were partners carrying on a wholesale grocery business under the firm name of Rohlfing & Co. Said bank stock really belonged to this firm, although it was purchased and held in the name of the defendant, Henry W. Wulfekuhler. On the 4th of September 1873, and for some time previously, the bank was in an embarrassed condition. On that day, Fred. Wulfekuhler sold said bank stock to Henry M. Herman. The defendant indorsed his name on said receipts, and Fred. Wulfekuhler delivered the same to Herman; and Herman, in return, drew a check on said bank in favor of Rohlfing & Co. for $2,100, and delivered the same to Fred. Wulfekuhler. Herman was at that time, and had been for several months previously, owing the bank on an overdrawn account; and the president of the bank had only a few days previously instructed both the cashier and the assistant-cashier of the bank not to honor any more of Herman's checks. Herman delivered said receipts to the cashier of the bank, and on the next day, September 5th, obtained a credit therefor for $2,100, to be entered in his favor on the books of the bank. Herman and the cashier considered this transaction as a sale of said stock to the bank, but the stock was never transferred on the books of the bank as required by statute, (Gen. Stat. 197, § 27,) and also as required by the by-laws of the bank; but the stock still continued to remain on the books of the bank, in the name of the defendant. Neither does it appear that the cashier had any authority to purchase said stock. Also, on that same day, (September 5th,) the book-keeper of Rohlfing & Co. took said check of Herman's to the bank, and the cashier gave to Rohlfing & Co. a credit therefor of

$2,100, and charged Herman with a like amount. Rohlfing & Co. (or in other words, the defendant and his brother Fred.,) afterward, but not for some days thereafter, drew out of the bank said $2,100, with which they had been credited on Herman's check. On September 17th the bank, on account of financial embarrassment, closed business. On September 18th the president of the bank tendered said receipts to the defendant, and demanded that the defendant should pay back to the bank said $2,100, but the defendant declined to do so, and then the bank commenced this action to recover said amount. The bank was reopened for business on 29th September 1873. The only question necessary to be now considered is, whether this action can be maintained upon the foregoing facts, and the law of the case. Now for the purposes of the case, we shall assume that the defendant acted in the best of faith in all the foregoing transactions; that the transaction with Herman was intended to be a *bona fide* sale of the defendant's stock to Herman; that in fact the defendant and his brother did not know of the embarrassed condition of said bank; that they did not know of the condition of Herman's account with the bank; that they did not know that Herman's check was not good; that they did not know anything concerning the transactions between Herman and the cashier; that they did not know, when they received said money from the bank on Herman's check, that they received it in consideration of a credit given to Herman for said stock receipts; and that in fact they believed, when they received said money, that they were simply receiving money from the bank which Herman had previously deposited with the bank; and assuming all these things, (which are assumptions in favor of the defendant and against the plaintiff,) then can the plaintiff recover? We think it can. For while we assume,

1. Bank officer; knowledge; presumption. as a matter of fact, that the defendant knew nothing of the condition or management of said bank, and nothing of the condition of Herman's account with the bank, yet still as a matter of law we think we must presume that he knew all about these matters. He was a director,

and the vice-president of the bank, and it was his duty to have such knowledge, and therefore the law will conclusively presume that he had it. *Merchants' Bank v. Rudolf*, 5 Neb. 527; *United Society of Shakers v. Underwood*, 9 Bush. (Ky.) 609; Morse on Banks and Banking, 90, et seq., 97, et seq., and 115. He cannot now, as against the interests of the bank and its stockholders, and perhaps its creditors, be allowed to plead ignorance and innocence, and thereby profit by his own want of knowledge, and by his own failure to do his duty as an officer of the bank. Such would be against both morals and law. Of course, we do not hold that a director is bound to know everything that transpires in a bank, and at the very time when it occurs. But we do hold that a director, having personal and private dealings with his bank, is bound to know (so far as the same affects his said personal dealings) the general condition and management of his bank, and everything of importance that occurs therein, either at the time it occurs, or soon thereafter. In the present case, the defendant was bound to know when he received Herman's check, and when he obtained the credit thereon, that the bank was embarrassed, and that Herman had no funds in the bank. And he was bound to know when he drew the money out of the bank that Herman was still owing the bank, and that the said credit to Herman of $2,100 was merely for said stock receipts. Said stock receipts we suppose really belonged to the firm of Rohlfing & Co., which was composed of the defendant and his brother Fred.; and the said money was drawn from the bank by the firm, and not merely by the defendant. But this makes no difference; for each member of the firm was bound to take notice of all of which the other had notice, or was bound to take notice; (*Merchants' Bank v. Rudolf*, supra;) and each member of the firm is liable in a separate action for all that the firm might be held to be liable. And as the firm obtained said money from the bank without any legal consideration therefor, as we shall presently see, the bank may recover it back. In Pennsylvania it has been held that it is a fraud upon

2. Knowledge of overdrafts.

a bank for the holder of a check to present the same to the
bank and receive a credit therefor, when he knows that the
drawer of the check has no funds in the bank with which to
meet it. (*Peterson v. Union National Bank,* 52 Penn. St. 206.)
The supposed sale of said stock from Herman to the bank
was void.   The cashier had no authority from the bank, or
3.Bank stock;      from any one else, to purchase it; and no one
purchase by
bank.              had any power to give him any such authority.
A bank cannot purchase its own stock, except in some few
cases for the purpose of securing some previously-existing
debt.   There is no law that attempts to give a bank any such
power.   And the purchasing by a bank of its own stock is
not one of the objects for which banks are created, and is
not legitimate banking business.   For a bank to use its funds
in the purchase of stock, is to withdraw that much of its
capital from legitimate banking business; and to purchase
its own stock, is in effect a withdrawal of that much of its
stock from actual existence, and in that way the bank might
reduce the amount of its capital stock below the amount re-
quired by law, (to-wit, $50,000; Gen. Stat. 225, § 128,) and
might also impair or even destroy all security given by law
to the creditors of the bank.   The law provides in effect that
not only the bank, with all its property, shàll be liable for
its debts, but also that each stockholder in the bank to the
amount of his stock, shall also be held liable. (Const., art.
12, § 2; Gen. Stat. 198, § 32.)   But if a bank may purchase
in all its stock, and own it itself, then where would be the
security to the creditors of the bank, except in the bank
itself?   They could not, after exhausting the property of the
bank, find any stockholders to sue.   The law never contem-
plated any such a thing.   But the law not only fails to au-
thorize a bank to purchase in its own stock, but in effect it
prohibits such a thing.   Section 26 of the act authorizing
the creation of banks provides, that "no corporation created
under the provisions of this act shall employ its stock, means,
assets, or other property, directly or indirectly, for any other

purpose whatever, than to accomplish the legitimate objects of its creation." (Gen. Stat. 197.)

Now as the defendant, or rather himself and his brother as partners, received said money from the bank, without the bank ever receiving any consideration therefor, and as the defendant was at the time a director and the vice-president of the bank, and is therefore conclusively presumed to have known all the facts, the bank may recover the money back from the defendant. The acts of the cashier cannot estop the bank as against the defendant, who is a director, and the vice-president of the bank. Such officers cannot be allowed to wrongfully use the funds of the bank, and then plead that the same was allowed by either the one or the other of such officers. They make themselves liable by so using the funds of the bank. The court below tried this case upon the theory that the defendant, as a director and vice-president, was not bound to know the condition of the bank, and the condition of Herman's account, and was not bound to know when he and his partner drew said money out of said bank that they drew the same out of the bank without any consideration to the bank; and for this reason the court erred in instructing the jury, and especially erred in not granting a new trial to the plaintiff.

*5. Cashier; estoppel.*

The judgment of the court will therefore be reversed, and cause remanded for a new trial.

HORTON, C. J., concurring.