BRIDGENS v. DOLLAR SAV. BANK OF KANSAS CITY, MO., et al.

(Circuit Court, W. D. Missouri, W. D. January 7, 1895.)

No. 1,916.

</div>

CORPORATIONS—MISCONDUCT OF OFFICERS—EQUITY JURISDICTION.
    B., as receiver in insolvency proceedings of the C. Bank, filed his bill against the D. Bank and one K., alleging that K. was a director and president of the C. Bank, and a director, cashier, and managing agent, as well as a stockholder, of the D. Bank, which had long been the holder of a large majority of the stock of the C. Bank, and had full control of the affairs

of that bank. The bill further alleged that, at the time of the insolvency of the C. Bank, it had $26,061 on deposit with the D. Bank, and held a certificate of deposit of the D. Bank for $3,040; that while the C. Bank was thus insolvent, and on the day before the appointment of the receiver, K., without authority of the directors of the C. Bank, caused a contract to be executed for the purchase by it from the D. Bank of the C. Bank stock, and a quantity of notes, owned by the D. Bank, for the amount of the C. Bank's deposits with the D. Bank, and thereupon caused the certificate of deposit to be surrendered to the D. Bank, and a check drawn to its order for the $26,061, and delivered to it, the stock and notes being delivered to the C. Bank. The bill prayed for a rescission of the sale of the stock and notes, which the complainant offered to return, and for repayment of the $26,061. *Held*, on demurrer, that the bill stated a case of breach of trust by K. as·an officer of the C. Bank charged with the duty of protecting its creditors and stockholders, and also of misconduct by him in acting at the same time for the two banks whose interests were opposed, which case was within the jurisdiction of a court of equity.

W. H. Bridgens, as receiver of the Citizens' Bank of Kansas City, Kan., filed his bill against the Dollar Savings Bank of Kansas City, Mo., and Kelly Brent, praying for the rescission of a sale of certain stock and notes by the Dollar Savings Bank to the Citizens' Bank, and a decree for the repayment to said Citizens' Bank of $26,061.25. The case, as made by the bill, was as follows:

Kelly Brent was a director and the president of the Citizens' Bank, and was also cashier and managing agent of the Dollar Savings Bank. The Dollar Savings Bank owned 797 shares out of a total of 1,000 shares of the capital stock of the Citizens' Bank, and through its officers and agents had full control of said Citizens' Bank. On July 17, 1893, the Citizens' Bank was wholly insolvent, and was known to Brent to be so. On that day said bank had on deposit, subject to check, in the Dollar Savings Bank, $26,061.25, and held a certificate of deposit of said Dollar Savings Bank for $3,040 more. On said 17th day of July, 1893, Brent, as cashier of the Dollar Savings Bank, and by virtue of his authority as president of the Citizens' Bank, compelled one Charles S. Squier, cashier of the Citizens' Bank, to execute a contract of sale with the Dollar Savings Bank, by which the 797 shares of the stock of the Citizens' Bank belonging to the Dollar Savings Bank were sold to the Citizens' Bank at their paid-up value, $19,925, and a number of notes belonging to the Dollar Savings Bank were also sold to the Citizens' Bank at their face value, $9,176.25. The stock and notes were received by Squier for the Citizens' Bank, and the certificate of deposit for $3,040 and a check for the $26,061.25 were delivered to the Dollar Savings Bank. This contract and transfer were made without the knowledge or consent of the directors of the Citizens' Bank, and were never ratified by them, and the transfer was never entered on the books of the Citizens' Bank. On July 18, 1893, in insolvency proceedings in a state court, the complainant was appointed receiver of the Citizens' Bank. On August 10, 1893, complainant tendered to the Dollar Savings Bank the stock and notes, and demanded the return of the $26,061.25, which was refused. The total liabilities of the Citizens' Bank, exclusive of capital stock, were $78,608.37, and its assets, apart from the amount claimed from the Dollar Savings Bank, were $17,587.72.

The defendants demurred to the bill for want of equity.

Scroggs & McFadden, McGrew, Watson & Watson, and Karnes, Holmes & Krauthoff, for complainant.

Lathrop, Morrow, Fox & Moore and Teasdale, Ingraham & Cowherd, for defendants.

PHILIPS, District Judge. The principal question raised by the demurrer to the bill is whether or not the complainant has a full

and adequate remedy at law for the grievances complained of. The contention on the part of the defendants' counsel is that a court of equity in the federal jurisdiction will not sustain a bill in a case of fraud to obtain only a decree for the payment of damages in money, when the like amount might be recovered in an action at law. This is predicated of the fact that under the judiciary act of 1789, under which the first congress established the courts of the United States, and defined their jurisdiction, it was enacted that "suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate and complete remedy may be had at law"; and, further, because five days after the enactment of this statute the same congress proposed to the legislatures of the several states the article, afterwards ratified as the seventh amendment of the constitution, which declares that "in suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." It may also be conceded that it is now the settled rule of law in the federal courts that an insolvent corporation, prior to dissolution and the cessation of business, may, the same as a natural person, dispose of its property by way of preferences among its creditors in payment of debts, and make sales to bona fide purchasers, so that the preferred creditor or bona fide purchaser will hold the property transferred as against the other creditors of the corporation and its stockholders. But it is just as true as ever that such transfers and purchases must be in good faith, and so as not to secure any unjust advantage to the managing officers of the insolvent corporation; and it is just as true as it ever was that the directors and managing officers of corporations sustain a trust relation to the corporation for the use and benefit of its creditors and stockholders, and that courts of equity will, as between such officers and those dealing with them, enforce a strict observance of their duties in favor of the stockholders and creditors of the corporation, and will interpose to prevent a misapplication and perversion of the trust property committed to their keeping and management. And it is the especial province of a court of equity to undo their acts and restore the status quo whenever and wherever, by fraudulent collusion with other parties, they misapply the trust property so as to work a fraud upon the cestuis que trustent. To this end, in order to work out the trust for the benefit of the wronged creditors and stockholders, a court of equity will pursue the trust property into whosesoever hands it may pass with notice of the wrong, and either restore it in kind or compel the participant to make equivalent restitution. This rule is clearly recognized in Wardell v. Railroad Co., 103 U. S. 658, where Mr. Justice Field observed:

"They [the officers and directors] cannot, as agents or trustees, enter into or authorize contracts on behalf of those for whom they are appointed to act, and then personally participate in the benefits. Hence all arrangements by directors of a railroad company to secure an undue advantage to themselves at its expense, by the formation of a new company as an auxiliary to the original one, with an understanding that they, or some of them, shall take stock in it, and then that valuable contracts shall be given to it, in the profits of which they, as stockholders in the new company, are to share, are so many

unlawful devices to enrich themselves to the detriment of the stockholders and creditors of the original company, and will be condemned whenever properly brought before the courts for consideration."

The bill of complaint alleges, and the demurrer admits, that one Brent was the president and one of the directors in the active management of the Citizens' Bank of Kansas City, Kan., and that through its officers and agents the defendant bank "had full control and management of the business and affairs of said Citizens' Bank." It further charges, and the demurrer admits, that Brent, the president and director of the Kansas bank, "persuaded, induced, and compelled Charles S. Squier (cashier of the Citizens' Bank) to accede to said Brent's demand" to make the pretended contract and transfer of said stock in the Citizens' Bank, and to cancel the certificate of deposit held by the Citizens' Bank against the defendant bank. It is the settled rule of equity jurisprudence that the directors and agents of two companies are disqualified from representing both companies in a transaction where the interests of the two companies are opposed, nor will one corporation be permitted to form a company ancillary to the original one, and contract with it to the disadvantage of the creditors and stockholders of one of the companies. Mor. Priv. Corp. §§ 529, 530. And a court of equity will, in such case, notwithstanding the apparent legal effect of such transfer and transaction between two such corporations, treat the same according to the real facts and equities of the case. McVicker v. Opera Co., 40 Fed. 861; Interstate Tel. Co. v. Baltimore & O. Tel. Co., 51 Fed. 49; Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357; Day v. Telegraph Co. (Md.) 7 Atl. 608.

Brent, as cashier of the one bank and president of the other, and the active manager of both, is presumed to have known of the financial condition and insolvency of the Citizens' Bank at the time of the transaction in question. He knew that the 700 and more shares of stock which he was putting off on the Citizens' Bank in satisfaction of its claim against the defendant bank was worthless; and, under the averments of the bill, the case stands as if he had made these mutual transfers and had entered the satisfaction in the Dollar Savings Bank of its indebtedness to the Kansas bank. As cashier and director of the Dollar Savings Bank, he was a stockholder and interested directly in its assets; so that, by the arrangement so made by him between these two banks, he sought to secure a direct advantage and benefit to himself as such stockholder. This a court of equity says cannot be done, and it will interpose to undo the act, and either establish the status quo between the two companies, or compel the one thus obtaining an unconscionable advantage to make restitution in a money equivalent. Under the statutes of the state of Kansas, under which the Citizens' Bank was organized and conducted, provision is made in case of the insolvency of such bank for the state court, upon petition of any party in interest, to interpose and adjudge the fact of insolvency, and to appoint a receiver therefor, who, by virtue of his office, becomes the representative of the state which grants the franchise, and of the creditors and stockholders of the insolvent corporation.

In his official capacity it becomes his duty, and he is invested with authority, to take such action for the use and benefit of such creditors and stockholders as will protect their interests in the trust property. So that in this action the receiver is not only pro hac the corporation, but he is the representative of all its creditors and stockholders. The bill in this case seeks to uncover the apparent legality of this transaction, and to get at the real bona fides thereof in the enforcement of the trust relation that the president, director, and manager of the Citizens' Bank sustained to it; and to that end it asks for a rescission and cancellation of the transfer of the certificate of deposit held by the Citizens' Bank against the defendant bank, and the transfer of said stock, and the notes attempted to be made by said Brent, representing the defendant bank, to the Citizens' Bank, which he also represented. Pomeroy, in his work on Equity Jurisprudence (volume 1, par. 110), observes that, notwithstanding the expansion of the powers of the law courts, "there are certain species of equitable remedies which have become well established and familiarly known, and which are accordingly designated by the term 'equitable remedies' wherever it is used." Among these he enumerates:

"Those which the legal procedure recognizes, but does not directly confer, and the beneficial results of which it obtains in an indirect manner. A familiar example is the relief of rescission or cancellation. A court of equity entertains a suit for the express purpose of procuring a contract or conveyance to be canceled, and renders a decree conferring in terms that exact relief. A court of law entertains an action for the recovery of the possession of chattels, or, under some circumstances, for the recovery of land, or for the recovery of damages; and although nothing is said concerning it, either in the pleadings or in the judgment, a contract or a conveyance, as the case may be, is virtually rescinded. The recovery is based upon the fact of such rescission, and could not have been granted unless the rescission had taken place. Here the remedy of cancellation is not expressly asked for nor granted by the court of law, but all its effects are indirectly obtained in the legal action. It is true the equitable remedy is much broader in its scope, and more complete in its relief; for its effects are not confined to the particular action, but by removing the obnoxious instrument they extend to all future claims and actions based upon it."

Counsel for defendants in their brief, while not controverting what seems to be the settled law of the state of Kansas (in Bank v. Wulfekuhler, 19 Kan. 63), that such banking corporation cannot become the purchaser of its own stock, as was attempted in this case, yet contend that there is this exception to the rule, that it may do so if necessary to secure a debt owing to it by the stockholder; and suggest that a state of facts may be shown by the defendant to bring this action within the exception, and that on such an issue, and possibly of complicated and doubtful testimony, it ought to be entitled to a trial thereof by a jury. It would be a sufficient answer to this to say that no such state of facts appears, even suggestively, on the face of the bill; and even if, on the hearing of this case, such an issue should arise, as one of the incidents of the case, it would not oust the jurisdiction of the chancellor to pass upon such issue; and, should he feel any embarrassment in passing upon such state of the evidence, it is perfectly competent

for him, under recognized chancery practice, to refer such issue of fact to a jury.. Of course, if it should turn out on the hearing that the single question between these two corporations is whether or not the defendant corporation, as such, in its dealing with the Citizens' Bank, by mere deceit and fraud obtained possession of the property of the Citizens' Bank, under circumstances which a court of law would declare to be void for fraud in its inception, remedial by a judgment for damages, the remedy at law would be adequate, plain, and complete, and the defendant would be entitled to its trial by jury. But it seems to the court, from a view of the whole bill, looking at the trust relation between these two banks, the one being operated as an adjunct of the other, and this transaction being conducted, in effect, by the managing officer for both banks, it discloses a breach of duty on the part of the trustee, which a court of equity is peculiarly constituted to inquire into, and remove out of the way of securing the ends of exact justice, in favor of the creditors and stockholders of the Citizens' Bank, the legal forms gone through with in the impugned transactions and transfers between the two banks. See Bank v. Wulfekuhler, supra; Railway Co. v. Miller (Mich.) 51 N. W. 981; Mor. Priv. Corp. §§ 1, 227; Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 101 Mo. 192, 13 S. W. 822; Patton v. Glatz, 56 Fed. 367.

It may further be observed that while the bill alleges that the attempted transfer of the stock of the bank was illegal, for the reason that it was not done on the books of the Citizens' Bank, and by authority of its directors, it does not follow that, as between third parties, a written transfer indorsed on such certificates may not, as between them, have the effect, in equity, if not in law, to invest the transferee with the title and the right to have the formal transfer on the books of the corporation made. Kortright v. Bank, 20 Wend. 93, affirmed 22 Wend. 360. See, also, International Bank v. German Bank, 71 Mo. 191. Why a court of equity has not jurisdiction to set aside such transfer as between these two banks, in holding the managing officer conducting the transaction to a faithful execution of his trust, is not apparent. The demurrer is overruled, with leave to the defendant to answer the bill if desired.