BARTH ET AL., RESPONDENTS, *v.* POCK ET AL., DEFENDANTS;
LARGEY ESTATE ET AL., APPELLANTS.

(No. 3,723.)

(Submitted November 2, 1915. Decided December 8, 1915.)

[155 Pac. 282.]

*Banks and Banking—Corporations—Liability of Stockholders—*
*Right to Donate Stock—Setoff—Statutory Construction—*
*Legislative Procedure—Enrolled Bills—Conclusiveness.*

Legislature—Enrolled Bills—Conclusiveness.
    1. Except for the purpose of determining whether on its final passage the names of those voting on it were entered on the legislative journals, courts may not go behind the duly authenticated enrolled bill; hence, recourse may not be had to such journals to ascertain whether a substantial provision and an arrangement of section numbers were embodied in a particular bill, different from the bill as it passed one of the Houses.

Statutory Construction—Power to Disregard Meaningless Words.
    2. Under the rule of statutory construction that whenever it is manifest from the face of an Act that words which have no place in it were inserted by mistake, courts will treat it as corrected to express the legislative will and omit such words, the expression "formed under this chapter or which may avail itself of its provisions," found in section 4012, Revised Codes, having to do with the regulation of banks,

(418)

*held* meaningless, and proper to be disregarded to give effect to the legislation.

[As to rules of statutory construction, see note in 12 Am. St. Rep. 827.]

Banks and Trust Companies—Stockholders—Nature of Liability.
3.  The double liability of a stockholder in a banking corporation is in its nature contractual and not penal.

Same—Corporations—Charter—Legislature may Alter.
4.  The legislature may alter the charter of an existing corporation by imposing greater burdens thereafter to be assumed by the stockholders than were imposed at the time it was granted; provided only that the alteration does not involve a confiscation of the rights of individuals, deprive them of their property without due process of law, or violate the elementary principles of natural justice.

Same—Nature of—Stockholders' Liability.
5.  The liability imposed by section 4012, Revised Codes, upon stockholders in a banking and trust corporation, in favor of those who are its creditors at the date of its failure, is individual.

[As to liability of stockholders under Banking Act, see note in 3 Am. St. Rep. 841.]

Same—When Stockholder is Creditor—Setoff.
6.  Where a stockholder in a banking or trust corporation is its creditor, he cannot have his claim set off against his stockholder's liabilty, but must discharge such liability and then proceed to recover on his claim as other creditors are required to do.

Same—Stockholders' Liability—How Enforced.
7.  The collection of the trust fund created for distribution ratably to the creditors of a banking corporation by the enforcement of the stockholders' double liability can be enforced only at the suit of all the creditors, or by one or more of them for the use and benefit of all.

[As to proceedings to enforce stockholders' liability, see note in 46 L. R. A. (n. s.) 446.]

Same—Right to Purchase Stock—Right of Stockholder to Donate Stock.
8.  *Held,* that a banking corporation cannot purchase its own stock; *held,* further, that, as between a holder of stock in such a corporation and its creditors, a donation of stock by him to the bank does not relieve him from the statutory double liability on such donated stock held by the bank at the date of its suspension, even though the gift was made at a time when the bank was solvent, in the utmost good faith and with the purpose of aiding it.

Statutes—Constitutionality—Who may not Question.
9.  (On Moton for Rehearing.)   The constitutionality of a statute cannot be called in question by a person whose interests have not been, or are not about to be, prejudicially affected by the operation of the statute.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

ACTION by William Barth and another against Huie Pock and others.   From a judgment for plaintiffs, defendants Largey and others appeal.   Affirmed.

*Messrs. Gunn, Rasch & Hall,* for Appellants, submitted a brief, a supplemental brief, and a brief in reply to that of Respondents; *Mr. M. S. Gunn* argued the cause orally.

Liability on Donated Stock. In view of section 3910, Revised Codes, and of the fact that there is no such provision as therein contained in the chapters relating to savings banks and trust deposit and security associations, it is fair to presume that the law-making power did not intend to place any restriction upon saving banks and trust deposit and security associations with reference to their acquiring and holding their own stock. We therefore submit that according to the law as declared in the case of *Porter* v. *Plymouth Gold Mining Co.,* 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938, the bank could have purchased the shares of stock in question, provided the rights of creditors would not have been affected thereby. But, however this may be, there is no question but that the bank could have taken the stock in payment of the indebtedness of the donors if it had been necessary to prevent a loss, and if it had done so, the donors would have been relieved of liability thereon. (*Draper* v. *Blackwell,* 138 Ala. 182, 35 South. 110; *City Bank* v. *Bruce,* 17 N. Y. 507; *Commissioners* v. *Thayer,* 94 U. S. 631, 24 L. Ed. 133; *Ralston* v. *Bank of California,* 112 Cal. 208, 44 Pac. 476.) The right of a national bank to acquire and hold its own stock is recognized in *United States* v. *Knox,* 102 U. S. 422, 26 L. Ed. 216. In *Rivanna Nav. Co.* v. *Dawsons,* 3 Gratt. (Va.) 19, 46 Am. Dec. 183, the right of a corporation to take by donation its own stock was upheld. If this stock had been donated and transferred to someone other than the bank, the donors would be relieved from the statutory liability. In any event, there can be no doubt that such would have been the effect of such a donation and transfer, unless it could be shown that the transfer was made in contemplation of insolvency of the bank and with a view, on the part of the donors, of escaping liability, and was, by reason thereof, fraudulent. (*Foster* v. *Row,* 120 Mich. 1, 77 Am. St. Rep. 565, 79 N. W. 696.)

The case of *Bowden* v. *Johnson,* 107 U. S. 251, 27 L. Ed. 386, 2 Sup. Ct. Rep. 246, cited by plaintiffs in the lower court, is not in conflict with *Foster* v. *Row,* but, on the contrary, recognizes that a stockholder in a national bank may be relieved from liability by a transfer of his stock to an irresponsible person, provided the transfer is made in good faith. (See, also, *McDonald* v. *Dewey,* 202 U. S. 510, 6 Ann. Cas. 419, 50 L. Ed. 1128, 26 Sup. Ct. Rep. 731.)

It was also argued in the lower court that the effect of the donations made was to reduce the capital stock of the bank. As no consideration was paid for the stock in question, and the bank has realized from the sale of a part of said stock a sum in excess of $22,000, there has been no reduction of the capital of the bank, but, on the contrary, the capital has been increased by the transaction. So far as the capital stock, as distinguished from the capital, is concerned, as the shares donated to the bank were donated for the purpose and accepted with the intention of selling them, there was no reduction of the capital stock. The fact that the bank sold a part of the stock donated shows conclusively that the stock donated was not extinguished or the capital stock reduced. (*Porter* v. *Plymouth Gold Min. Co.,* above.)

Even in those states in which the right of a corporation to purchase its own stock is denied, a corporation may accept its own stock in payment of an indebtedness where it is necessary to do so to avoid loss, and, as before remarked, if a corporation can take its own stock in payment of an indebtedness, then, *a fortiori,* it may accept a donation of its own stock.

After the bank elected to continue its existence under the provisions of the Civil Code of 1895, applicable thereto, the liability of the stockholders was controlled and limited by section 3953. This section imposed a liability upon each stockholder for the debts contracted during the time that he was a stockholder. The liability thus imposed was contractual, and entered into and became an obligation of every contract by which an indebtedness was created in favor of the creditor. (*Whitman*

v. *National Bank,* 176 U. S. 559, 44 L. Ed. 787, 20 Sup. St. Rep. 477 ; *Deweese* v. *Smith,* 106 Fed. 438, 45 C. C. A. 408.) This obligation was one which could not be impaired by any subsequent law by virtue of the prohibition in the Constitution of the United States against the enactment of laws impairing the obligation of contracts. (*Hawthorne* v. *Calef,* 2 Wall. 10, 17 L. Ed. 776; *McDonnell* v. *Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5 South. 120; *Howarth* v. *Lombard,* 175 Mass. 570, 49 L. R. A. 301, 56 N. E. 888.)

The right of a stockholder, who is also a creditor, to have his statutory liability reduced by the amount of the indebtedness owing by the corporation to him, has never been decided by the courts of this state. Other courts, when the question was first presented, have universally endeavored to decide the same so as to accomplish, as near as possible, equal and exact justice to all parties. (See *Sargent* v. *Stetson,* 181 Mass. 371, 63 N. E. 929; *Cahill* v. *Original Big Gun etc. Assn.,* 94 Md. 353, 89 Am. St. Rep. 434, 50 Atl. 1044; *Mathez* v. *Neidig,* 72 N. Y. 100; *Washington Sav. Bank* v. *Butchers' etc. Bank,* 130 Mo. 155, 31 S. W. 761; *Wheeler* v. *Millar,* 90 N. Y. 353; 3 Clark and Marshall on Corporations, p. 2622; Cook on Corporations, 7th ed., p. 638.)

This court has decided that where a person occupies the position of both debtor and creditor of a bank at the time of its insolvency, and his demand against the bank is due at the time, he may offset the indebtedness of the bank to him against his indebtedness to the bank. (*Williams* v. *Johnson,* 50 Mont. 7, 144 Pac. 768; *Stadler* v. *First National Bank,* 22 Mont. 190, 75 Am. St. Rep. 582, 56 Pac. 111.) Such an offset does not operate to prefer the creditor who is allowed the offset over other creditors. (*Scott* v. *Armstrong,* 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. Rep. 148.)

*Messrs. Kremer, Sanders & Kremer,* for Respondents, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

All transactions involving pure donations of stock to banks under circumstances like those here involved have met with the

judicial condemnation of all courts so far as we have been able to investigate them. (See *In re Reciprocity Bank*, 22 N. Y. 18; *In re Empire City Bank*, 6 Abb. Pr. (N. Y.) 385; *Barto* v. *Nix*, 15 Wash. 563, 46 Pac. 1033; *In re Columbian Bank*, 147 Pa. St. 422, 23 Atl. 627; *Tulare Irr. Dist.* v. *Kaweah Canal & Irr. Co.*, 5 Cal. Unrep. 330, 44 Pac. 662.) To hold that a bank can in effect reduce its capital by donations of stock to it, which stock is never resold, but held by the bank, is to overlook and render inoperative and ineffective the statute providing for the stockholders' liability. (*Maryland Trust Co.* v. *National Mechanics' Bank*, 102 Md. 608, 63 Atl. 70; *Minnehaha Driving Park Assn.* v. *Legg*, 50 Minn. 333, 52 N. W. 898; *Thompson* v. *Reno Savings Bank*, 19 Nev. 103, 3 Am. St. Rep. 797, 7 Pac. 68; *Handley* v. *Stutz*, 139 U. S. 417, 35 L. Ed. 227, 11 Sup. Ct. Rep. 520.) Even in those decisions that sustain the right of a corporation to purchase its own stock, such transactions are not upheld in any instance "where the rights of creditors are affected." (Clark & Marshall, Private Corporations, secs. 200, 411; *Rochester & Kettle Falls Land Co.* v. *Raymond*, 47 L. R. A. 246, note V, 262.)

As a matter of law, this statutory liability not only as to the donated stock, but as to the other stock admittedly owned by them, is contingent upon the insolvency of the bank. So long as the bank is paying the debts due from it to its creditors, they would be laughed out of court should they seek to recover from the stockholders that which the bank owes them. It is only when the bank becomes insolvent and unable to pay that these statutory stockholders' liabilities become suable as to creditors. The authorities almost without dissent hold that before stockholders can be subjected to any personal liability for their unpaid subscriptions, for capital withdrawn, or for a statutory assessment, the inability of the bank to pay its creditors must be judicially established. (*Boyd* v. *Mutual Fire Assn.*, 116 Wis. 155, 96 Am. St. Rep. 948, 61 L. R. A. 918, 90 N. W. 1086; *Baines* v. *Babcock*, 95 Cal. 581, 29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776; *Younglove* v. *Kelly etc. Co.*, 49 Ohio St. 663, 33 N. E.

234; *Platt* v. *Hungerford,* 116 Fed. 771; *Barrick* v. *Gifford,* 47 Ohio St. 180, 21 Am. St. Rep. 798, 24 N. E. 259; *Garesche* v. *Lewis,* 15 Mo. App. 565; *Bronson* v. *Schneider,* 49 Ohio St. 438, 33 N. E. 233; *Tama etc. Co.* v. *Hopkins,* 79 Iowa, 653, 44 N. W. 797; *First Nat. Bank* v. *King,* 60 Kan. 733, 57 Pac. 952; *First Nat. Bank* v. *Green,* 64 Iowa, 445, 17 N. W. 86, 20 N. W. 754; *Wright* v. *Mc-Cormick,* 17 Ohio St. 87.)

As to the liability of stockholders under a statute imposing a stockholders' liability for future debts, there is absolutely no question or dispute. The objection of impairment of obligation of contract cannot exist. (*Stanley* v. *Stanley,* 26 Me. 191; *Gray* v. *Coffin,* 9 Cush. (Mass.) 192; *Sherman* v. *Smith,* 1 Black, 587, 17 L. Ed. 163; *Sleeper* v. *Goodwin,* 67 Wis. 577, 31 N. W. 335, 340; *Straw & Ellsworth Mfg. Co.* v. *Kilbourne etc. Shoe Co.,* 80 Minn. 125, 83 N. W. 36; *Barnes* v. *Arnold,* 23 Misc. Rep. 197, 51 N. Y. Supp. 1109; *United States Trust Co.* v. *United States Fire etc.,* 18 N. Y. 199; *In re Reciprocity Bank,* 22 N. Y. 9; *Allen* v. *Welsh,* 25 Minn. 543; Jones on Failing & Insolvent Corporations, sec. 316.) Appellant stockholders cannot, as creditors, invoke the aid of the statute. It is not intended for the benefit of a creditor who is also a stockholder. (*Potter* v. *Stevens M. Co.,* 127 Mass. 592, 34 Am. Rep. 428; *Thompson* v. *Bemis Paper Co.,* 127 Mass. 595; *Cheney* v. *Scharman,* 129 N. Y. Supp. 993.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The State Savings Bank of Butte was organized in 1890, with a capital stock of $100,000, which was increased in 1904 to $300,000. After the enactment of the Codes in 1895, it elected to continue its existence under the statutes then in force. In 1912 many of the stockholders, including these appellants, each donated to the bank one-third of all shares of stock in the bank then owned by him for the purpose of building up the surplus and providing a fund out of which to pay losses incurred by the bank. Less than one-fourth of the donated shares were resold,

and at the date of its suspension the bank still held 616 5/9
shares, or more than one-fifth of its entire capital stock. The
bank failed in 1914, with assets amounting to $1,400,000 and
liabilities of more than $1,800,000. At the date of suspension,
defendants Hickey, Leonard and McDonald were sureties on a
statutory undertaking given by the bank to the county treas-
urer of Silver Bow County. Hickey and Leonard were cred-
itors of the bank and were also sureties on an undertaking given
by the bank to the city treasurer of Butte. They had further-
more entered into an agreement to save harmless the United
States Fidelity & Guaranty Company on account of an under-
taking furnished by that company to secure deposits of state
funds. Each of the appellants admits liability upon the shares
of stock standing in his name at the date of the bank's suspen-
sion, but denies liability upon the shares donated by him.
Hickey, Leonard and McDonald each claims the right to setoff
against his stockholder's liability, the amount of the bank's in-
debtedness to him, including therein the amounts paid on ac-
count of the several undertakings mentioned. The trial court
denied the right of setoff, and held each of the appellants liable
as a stockholder upon the shares of stock donated by him to
the bank and not resold at the date the bank failed. The ap-
peal is from the judgment and presents the two questions, *viz.*:
The right of setoff, and the liability of the stockholders upon
the unsold donated stock.

1. *The Right of Setoff.* The right claimed by Hickey,
Leonard and McDonald each to have deducted from his stock-
holder's liability the indebtedness of the bank to him, is not,
strictly speaking, the right of setoff, but, for brevity, may be
designated such. If the right exists, it arises from the peculiar
character of the liability imposed upon these appellants by the
statutes in force at the date the donations were made. When
the bank was organized, the governing statute was section 545,
Fifth Div.; Compiled Statutes of 1887, which declared a uni-
form, but limited, double liability upon the stockholders of sav-
ings banks and trust deposit and security companies, hereafter

referred to as trust companies. By the Codes of 1895, the liability of a stockholder in a trust company was imposed by section 601, Civil Code (sec. 3934, Rev. Codes), a somewhat different liability for a stockholder in a savings bank was fixed by section 628 (3953, Rev. Codes), while the liability of a stockholder in a bank of discount was prescribed by section 578 (3915, Rev. Codes). Though organized as a savings bank only, this institution in 1904 elected to extend its business to include that which might be conducted by a trust company, as it was authorized to do by section 609, Civil Code (3942, Rev. Codes). In 1907 there was enacted a statute entitled, "An Act relating to Banks and Banking Corporations and to Trust Deposit and Security and Savings Bank Corporations, and repealing Section 4061 of the Political Code of Montana relating to Licenses." Section 4, now section 4012, Revised Codes, provides: "The stockholders of every corporation formed under this chapter, or which may avail itself of its provisions, shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." (Laws 1907, Chap. 190.) This statute is assailed by appellants upon three grounds:

(A) It is insisted that the enrolled bill signed by the presiding officer of each House of the legislative assembly bearing the [1] approval of the governor and lodged in the office of the secretary of state, contains a substantial provision and on arrangement of section numbers which did not appear in the bill as it passed the senate; and this court is urged to consult the legislative journals to verify the charge made, and, if it be found to be true, to hold the entire measure invalid. This we may not do. It is the rule in this state that the courts will not go behind the duly authenticated enrolled bill, except to determine whether on its final passage the names of those voting were entered on the journal. (*Palatine Ins. Co.* v. *Northern Pac. Ry.*

*Co.,* 34 Mont. 268, 9 Ann. Cas. 579, 85 Pac. 1032; *State ex rel. Gregg* v. *Erickson,* 39 Mont. 280, 102 Pac. 336.)

(B) Section 4012 is also attacked on the ground that it is meaningless; and it must be confessed that it approaches as nearly that stage of imperfection as it could do and retain any [2] vitality whatever. The words "formed under this Chapter or which may avail itself of its provisions," have no place in the section and cannot be assigned any meaning. In its entirety the Act provides for transferring certain duties from the state auditor to the state bank examiner; fixes the minimum reserve which banks are required to maintain; determines the maximum credit which may be extended to a single individual, corporation or copartnership; establishes a basis for assessment of property belonging to a bank; provides a penalty for offenses against the banking laws not otherwise covered by existing statutes, and very clearly intended to provide a uniform rule of liability for stockholders in the different classes of corporations under consideration. The Act has to do with existing, going concerns. No provision is made therein for the organization of a corporation, and neither does the Act contemplate that its provisions may be availed of at the option of any existing company. All of its terms became effective and binding upon banking and trust companies upon the passage and approval of the Act. But neither the entire measure nor section 4012 should be held invalid if, taken as a whole, the legislative intention can be ascertained and be found to be expressed in language the meaning of which can be comprehended. While the courts are without legislative power, the rule is recognized generally that whenever it is manifest from the face of an Act that an error was made in the use of words, the courts will treat it as corrected to express the legislative will. In *Hilburn* v. *St. Paul, M. & M. Ry. Co.,* 23 Mont. 229, 58 Pac. 551, 811, this court recognized the rule and in elucidation of it said: "One word or phrase may be read for another. Words, phrases and clauses may be expanded or restricted in their meaning so as to carry out the obvious intent of the legislature. The obvious sense in which words are in-

tended to be understood, and not their abstract force, is to be followed. Words and phrases may be omitted. An erroneous description may be corrected. Phrases may be transposed in order that the sentence may be read in its obvious sense, and attributive words be applied to the proper object. So the court will adopt any other method to make the law effective, provided the context furnishes the real intent of it, and it is not necessary to add substance to it to make it effective.'' Every other section of the Act furnishes evidence that the legislature was considering banks of discount and deposit, trust deposit and security corporations, and savings banks organized under the laws of this state. If the objectionable language quoted above had been omitted, the meaning of the lawmakers could not have been in doubt. A reference to the title of the Act and to section 7 (4015, Rev. Codes), which declares that the provisions shall apply only to banking corporations organized under the laws of this state, would have made clear the meaning intended by the use of the general terms employed. We feel justified in assigning the quoted portion of section 4012 above to the category of superfluous and meaningless expressions which creep into legislation, and in disregarding it in order that the manifest purpose of the lawmakers may be given effect. It is equally apparent that it was the intention of the legislature that the provisions of the Act should apply to existing concerns, as well as to those thereafter to be organized.

(C) The double liability of a stockholder in a banking
[3] corporation is in its nature contractual and not penal (*Foster* v. *Row*, 120 Mich. 1, 77 Am. St. Rep. 565, 79 N. W. 696; *Whitman* v. *National Bank*, 176 U. S. 559, 44 L. Ed. 787, 20 Sup. Ct. Rep. 477; 1 Michie on Banks & Banking, sec. 47(3); and since section 4012 imposes a greater liability upon stockholders than was imposed by the statutes in force prior to its enactment, the contention is made that it transgresses the provision of section 10, Article I of the Constitution of the United States, in that it impairs the obligation of the contract which each of these appellants entered into when he became a stock-

holder in the State Savings Bank. With this contention we do not agree. Sections 2 and 3, Article XV, of our State Constitution, provide:

"Section 2. No charter of incorporations shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state; but the legislative assembly shall provide by general law for the organization of corporations hereafter to be created; Provided, that any such laws shall be subject to future repeal or alterations by the legislative assembly.

"Section 3. The legislative assembly shall have the power to alter, revoke or annul any charter of incorporation existing at the time of this Constitution, or which may be hereafter incorporated whenever in its opinion it may be injurious to the citizens of the state."

These provisions received careful consideration in *Allen* v. *Ajax Min. Co.*, 30 Mont. 490, 77 Pac. 47, and *Somerville* v. *St. Louis M. & M. Co.*, 46 Mont. 268, L. R. A. 1915B, 811, 127 Pac. [4] 464, and the right of the legislature to alter the constating instrument of an existing corporation by imposing greater burdens thereafter to be assumed by the stockholders than were imposed at the time the charter was granted—provided only that the alteration does not involve a confiscation of the rights of individuals, deprive them of their property without due process of law, or violate the elementary principles of natural justice—was upheld. To the same effect is *Lewis* v. *Northern Pacific Ry. Co.*, 36 Mont. 207, 92 Pac. 469. The authority of the legislature under such reserved power to increase the burden of liability imposed upon stockholders in a banking corporation, or to impose a personal liability for the debts of the company thereafter to be contracted, where none was imposed at the date of the company's organization, has been recognized and asserted by many of the authorities. (*Sherman* v. *Smith*, 1 Black (U. S.), 587, 17 L. Ed. 163; *McGowan* v. *McDonald*, 111 Cal. 57, 52 Am. St. Rep. 149, 43 Pac. 418; 10 Cyc. 669;

4 Thompson on Corporations, secs. 4773, 4779.) The theory upon which the Allen and Somerville cases were decided is that a prospective purchaser of stock in a domestic corporation is chargeable with knowledge of the provisions of the Constitution quoted above; that those provisions enter into his contract when he becomes a stockholder, and that he agrees not only to be bound to the liability then imposed, but as well to such additional liability as the legislature under its reserved power may properly prescribe; and therefore he cannot be heard to say that a statute which does not unreasonably affect his liability impairs the obligation of his contract. We are satisfied with the correctness of that theory, and hold the Act of 1907 above not open to the objection now urged against it.

The Act repeals all Acts and parts of Acts in conflict with it; so that on March 9, 1907, sections 3915, 3934 and 3953, Revised Codes, which had theretofore respectively determined the liability of a stockholder in a bank of discount, in a trust company, and in a savings bank, were superseded, and since that date the uniform standard of liability imposed by section 4012 [5] above has been in full force and effect. The liability is several and individual, created by statute in favor of all who are creditors at the date of the bank's failure. Under this statute, the fund collected from an assessment upon the stock is held in trust for a ratable distribution among all the creditors, and its character is such as to preclude the idea that a stockholder may have his creditor's claim set off against his stockholder's liability. The two claims do not arise in the same [6] right. His claim is against the bank, while his liability is to the creditors—not to the bank. Reason and practically all the authorities deny the right of setoff under such circumstances. These appellants must discharge the liability imposed by law, and may then present such valid claims as they have against the bank for allowance and payment, as other creditors are required to do. (*Barnes* v. *Arnold,* 45 App. Div. 314, 61 N. Y. Supp. 85; affirmed, 169 N. Y. 611, 62 N. E. 1093; *Robinson* v. *Brown,* 126 Fed. 429; *Parker* v. *Carolina Sav. Bank,*

53 S. C. 583, 69 Am. St. Rep. 888, 31 S. E. 673; *Thebus* v. *Smiley,* 110 Ill. 316; 1 Bolles on Modern Law of Banking, p. 170; 1 Michie on Banks & Banking, p. 223; 1 Cook on Stock & Stockholders (3d ed.), sec. 225 (c) ; 5 Cyc. 454.)

2. *Liability upon Donated Stock.* Counsel for appellants insist that the principle has been established in this state that a domestic corporation may become the purchaser of its own stock, and it is now urged that if it may do so and for that purpose expend a portion of its assets, *a fortiori* it may accept a gift of shares of its own stock which does not involve any diminution of its other property holdings. We do not agree with counsel that the rule is as broad as stated. In *Porter* v. *Plymouth Gold Min. Co.,* 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 939, this court did hold that a domestic corporation may become the purchaser of its own stock, and that such purchase does not necessarily operate to reduce its capital stock in violation of the statute which provides the exclusive method by which such a reduction may be effected. At the time the decision was rendered, the writer of this opinion characterized the pronouncement as *dictum,* and is now more than ever satisfied with the correctness of his conclusion as then expressed. But whatever else may be said of the decision, it is to be understood in the light of the facts then before the court. The Plymouth company was a corporation engaged in mining. It was a going concern, without creditors so far as the record disclosed. The only question which could have been considered, and the one from which the rule emanated, arose out of a contract which the corporation entered into, to repurchase certain shares of its own stock. This court was dealing with an ordinary trading corporation whose stockholders were exempt from individual liability for corporate debts, and while the language employed in the opinion is general, its meaning is not to be extended beyond the scope of the inquiry then made. It could not have been the intention to declare a general rule applicable to all domestic corporations; for at the time it was announced, and for many years before, banks of discount organized as corpo-

rations under the laws of this state were expressly prohibited from purchasing their own stock except in the presence of a necessity to prevent loss. If the necessity did not exist, the prohibition was absolute, and it was absolute in the sense in which the rule was promulated in the *Plymouth Case.* So that the utmost that can be said of our former decision is, that it recognized the right of a domestic trading corporation to purchase its own stock, but has no application whatever to banks or trust companies.

It is unnecessary to inquire whether the authorities which justify a purchase, by a trading corporation, of a portion of its own stock in the ordinary course of business, would sanction the purchase by such corporation of all of its stock. Neither is it a pertinent inquiry to ascertain the views of courts from those jurisdictions which specifically authorize such purchase or make no distinction between the liability of a stockholder in a trading corporation and in a corporation engaged in the banking business. In this state the distinction is clearly drawn. The statutory double liability of a stockholder is peculiar to the law governing banking corporations—including therein trust companies. The creditor of a trading corporation must look to the corporation's assets for the discharge of his claim, but, in a sense, the creditor of a banking corporation has double security. He may look to all the assets of the bank in the first instance, and, if they are not sufficient, he may then call upon the stockholders to contribute a fund which may equal the par value of the entire authorized capital. Over [7] such fund the corporation has no control. It cannot release a stockholder from all or any portion of his liability, and neither it nor the receiver in charge of its affairs can even maintain an action for its enforcement, for it is not a corporate asset. (*Zang* v. *Wyant,* 25 Colo. 551, 71 Am. St. Rep. 145, 56 Pac. 565; *Farmers' Bank* v. *Scott,* 144 Ky. 575, 139 S. W. 801.) It is a reserve trust fund created for the benefit of creditors, and under our statute must be distributed ratably to all of them. Its character is so far distinct that collection

can be enforced only at the suit of all the creditors or by one or more creditors for the use and benefit of all. (*Bank* v. *Scott*, above; 3 Clark & Marshall on Private Corporations, p. 2584; 3 R. C. L. 412.)

If the transaction between these appellants and the bank had constituted a sale, and funds of the bank had been paid out [8] in exchange for the stock, it would have met the condemnation of the statutes governing banks and trust companies. Section 3910, Revised Codes, in terms forbade a bank of discount and deposit to be the holder or purchaser of any portion of its own stock unless necessary to prevent a loss upon· a debt previously contracted in good faith, upon security which was then deemed adequate, independently of the bank stock. Unless the necessity existed, the prohibition was absolute. The grant of authority in the one instance precluded its exercise in any other. *Expressio unius est exclusio alterius.* Section 3951, by its specific direction as to the purposes to which the funds of a savings bank could be applied, excluded the purchase of its own stock by such an institution. Section 3937, subdivision 9, provided: "Corporations may be created under this article for any one or more of the following purposes: * * * Ninth: To buy and sell government, state, county, municipal and other bonds, and all kinds of negotiable, nonnegotiable and commercial paper, stocks and other investment securities." This language would seem to be sufficiently broad to authorize a trust company to purchase shares of its own stock; but when read in connection with sections 3928 and 3930, which dealt, respectively, with the character of property which a trust company could hold, and the security which it might accept, we think it fairly deducible that the phrase "stocks and other investment securities" applied to stocks in companies other than the trust company itself, and that the right of a trust company to purchase its own shares was limited, as was the right of a bank of discount and deposit by section 3910.

As further indicating the public policy of this state, the new Banking Act (Chapter 89, Laws 1915) forbids any bank or

trust company purchasing its own stock or loaning its funds upon the security of its own stock "unless such purchase or loan shall be necessary to prevent loss to such bank on debts previously contracted in good faith." Though the courts might be justified in sanctioning a purchase of its own stock by a trading corporation, the same rule cannot now be applied to banks and trust companies, and we are of the opinion that the same distinction was made prior to the legislation of 1915 either by express legislative declaration or by necessary implication.

The Virginia court has held that a trading corporation may take a devise of shares of its stock. (*Rivanna Nav. Co.* v. *Dawson,* 3 Gratt. 19, 46 Am. Dec. 183.) The Alabama court decided that a solvent bank may purchase its own stock, but it does not appear from the opinion that Alabama then had a double liability statute for banking corporations. (*Draper* v. *Blackwell,* 138 Ala. 182, 35 South. 110). Under section 5201, U. S. Rev. Stats. the terms of which are similar to our section 3910 above, a national bank may take shares of its own stock to save itself from loss, and the same rule prevails in California. (*Ralston* v. *Bank of California,* 112 Cal. 208, 44 Pac. 476.) The supreme court of the United States extended the doctrine so as to permit the purchase of shares in another corporation by a national bank for the purpose of saving itself from loss. (*First Nat. Bank* v. *Exchange Nat. Bank,* 92 U. S. 122, 23 L. Ed. 679.) In *McDonald* v. *Deewey,* 202 U. S. 510, 6 Ann. Cas. 419, 50 L. Ed. 1128, 26 Sup. Ct. Rep. 731, it was held that the transfer of stock by a stockholder in a national bank will be held void or valid, depending upon the answer to the question: Did the seller at the time of the transfer know, or ought he to have known, that the bank was insolvent or practically so? And to the same effect in *Bowden* v. *Johnson,* 107 U. S. 251, 27 L. Ed. 386, 2 Sup. Ct. Rep. 246. Other courts hold that a stockholder in a solvent bank may, by sale or gift, transfer his stock to a person financially irresponsible and escape liability, if the transaction was *bona fide.* (*Foster* v.

*Row,* above; *Sykes* v. *Holloway,* 81 Fed. 432.) In *City Bank* v. *Bruce,* 17 N. Y. 507, it was held that a bank might take from its stockholder shares of its own stock in satisfaction of a debt due to the bank, and the same holding was made in Ohio. (*Taylor* v. *Miami Exporting Co.,* 6 Ohio, 176.) These authorities, cited by appellants, shed little if any light upon the question before us, in view of our own statutes to which reference has been made. But irrespective of the rule which may prevail in other jurisdictions, we think it clear, and so hold, that at the time these donations were made, the State Savings Bank could not have purchased its own shares in the ordinary course of business and thereby relieved the stockholders from their liability to the creditors when the bank failed. Equally cogent reasons exist for denying to a stockholder the right to relieve himself from such statutory liability by making a donation of stock to the bank. The State Savings Bank was owned by its stockholders. The statute which imposes double liability entered into the contract by which the creditor became such, and it would be a curious rule of law which would permit one party to a contract to change the measure of his liability to the detriment of the other without his consent. The double liability follows the stock, and when shares are found to be held by an insolvent bank, there is not anyone against whom the liability may be enforced or enforcement sought to the extent of the stock so held. It is ridiculous to urge that the insolvent bank may be treated as a stockholder and pursued as such.

If it was lawful for each of these appellants to donate one-third of his stock to the bank, it was equally lawful for every other stockholder to do likewise; and any rule which sanctions a donation of one-third would justify a donation of two-thirds, seven-eighths, or any other proportion of the stock, save a bare sufficiency to maintain corporate existence and qualify the necessary directors. In the absence of any reduction of the capital stock in the manner authorized by law, every creditor of this bank had the right to assume that in addition to the

assets of the bank, his claim was secured by this liability fund to the extent of $300,000, or so much thereof as might be collected by assessments equal to the par value of the stock. To emphasize the argument, let it be assumed that instead of the bank owning 616 5/9 shares of its stock at the date of its suspension, it had owned 2,000 shares donated by stockholders financially able to respond to an assessment of 100 per cent on the shares thus respectively given away. When the failure came, the creditors would find that, without their knowledge or consent, the stockholders by agreement with the bank—substantially an agreement with themselves—had avoided a liability of $200,000, and that the statute, which was designed to secure this fund to prevent or minimize loss, had been circumvented to the advantage of the stockholders and in fraud of the creditors. A result so manifestly unjust ought not to receive the sanction of any court. That these stockholders in making their donations acted in the utmost good faith and with the laudable purpose of aiding the bank, is of no moment here. The effect of their transaction was to reduce the trust fund created for the benefit of creditors, and which the law contemplated should be held in abeyance intact in the hands of stockholders against whom an action might be maintained to enforce its collection whenever the necessity therefor arose.

It is unnecessary to determine whether, as between a solvent bank and its stockholder, a valid gift of stock may be made by the latter to the former; but we do hold that as between the stockholder and the creditors of the bank when it becomes insolvent, such donation does not relieve the stockholder from the superimposed liability upon his donated stock held by the bank at the date of its suspension, even though the donation was made at a time when the bank was a solvent, going concern. He will be treated as an equitable owner for the purpose of enforcing the statutory liability.

We have not found any adjudicated case directly in point, but upon principle our views are sustained by authorities which command our respect. In *In re Columbian Bank*, 147 Pa. St.

422, 23 Atl. 625, the court, in treating a somewhat analogous question, said: "The capital stock of a bank is a trust fund for the payment of its debts, and the use of this fund in the purchase of shares in itself is destructive of a security intended primarily for its creditors, and a plain misappropriation of it. If the corporation was permitted to so use the trust fund, it might in this way distribute its entire capital among its shareholders, extinguish their personal liability, and leave its creditors without security or remedy. We cannot concede that it has a power which would make such results practicable."

In *Maryland Trust Co.* v. *National Mechanics' Bank,* 102 Md. 608, 63 Atl. 70, the court denied to a state bank the right to purchase its own stock. The decision is put upon the ground that such a transaction amounts to a reduction of the security intended for creditors, is a palpable disregard of the fundamental agreement of the stockholder, and is condemned by the plainest dictates of a sound and virile public policy. To the same effect is *German Sav. Bank* v. *Wulfekuhler,* 19 Kan. 60.

The judgment of the lower court meets our approval and is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

### ON MOTION FOR REHEARING.

(Submitted January, 3, 1916. Decided February 24, 1916.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In their motion for rehearing, counsel for appellants insist that this court misapprehended their position with respect to the question of the constitutionality of section 4012, Revised Codes. If their contention be conceded, they are only the worse off. Appellants could raise the question of the validity of section 4012, as it affected them as stockholders, but they cannot even raise the question of constitutionality in favor of

creditors, for it is nowhere made to appear from the record that any of these appellants. or any creditor of the bank at the date of its failure was a creditor at the time section 4012 became effective, or that anyone is in a position to say that his interests were or could have been injuriously affected by the application of the provisions of this statute. It is the rule in this state, and generally for that matter, that no one will be **[9]** heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by the operation of the statute. (*Spratt* v. *Helena P. T. Co.*, 37 Mont. 60, 94 Pac. 631; *State ex rel. Holiday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204; Cooley's Constitutional Limitations (7th ed.), p. 232; 8 Cyc. 787; 6 R. C. L., p. 89.)

The other grounds of the motion have received due consideration, but we think there is not presented any question which calls for a rehearing of the appeal. The motion is denied.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.